# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 76036-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TWINN NIGEL CALDWELL, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 23, 2017 |
| | ) | |

2017 JAN 23 AM 11:01
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

APPELWICK, J. — Caldwell shot multiple firearms in a town house with his young son present. He argues there was insufficient evidence to establish unlawful possession of firearms and methamphetamine, because he was living temporarily at the town house, and he shot the firearms to protect against intruders. He contends that he did not recklessly endanger his son. He argues that his trial counsel provided ineffective assistance and the prosecutor committed misconduct. We affirm.

## FACTS

On March 12, 2015, police officers were dispatched to a town house complex for a shots fired call. When they approached the residence, they saw Twinn Caldwell standing nearby, holding a small child in his arms. After taking

Caldwell into custody, an officer noticed a Springfield .45 caliber pistol on the ground close to where Caldwell was standing.

The officers inspected the residence. They did not see anyone inside the house. The officers saw small holes, which appeared to be bullet holes, in the ceiling and kitchen. Detective Lynelle Anderson from the Pierce County Sheriff's Department helped execute the search warrant. She noticed a .45 caliber magazine on the floor just inside the entryway of the town house. Above her, she saw two bullet holes in the ceiling. By the staircase, she saw a ballistic vest and a second gun magazine.

Detective Anderson went up the stairs of the town house and searched the first bedroom (bedroom one). Bedroom one contained a dresser against a wall and a bed with bedding on it. There were several .308 rounds, another ballistic vest, and two spent .45 caliber shell casings on the floor of the bedroom. A bag with apparent crystal methamphetamine and a glass smoking pipe was on the floor.[1] And, there were two areas on the carpet that appeared to have bullet holes.

Detective Anderson also searched the second bedroom (bedroom two). Bedroom two did not contain a bed, but did contain a desk and multiple pieces of luggage. Detective Anderson found documents with Caldwell's name on them in bedroom two. And, she found an empty ammunition box, a rifle case, and more .308 rounds on the ground. There was also a red backpack, which contained adult and children's clothing, ammunition, and a letter with Caldwell's name on it. A

---

[1] Later testing confirmed the substance to be methamphetamine.

2

spent .30-06 shell casing was found in the upstairs hallway, and a .30-06 bullet was found downstairs, under the stairs.

Two loaded rifles were found in the garage, wedged between two mattresses. One was a .308 caliber rifle, and the other was a .30-06 caliber rifle. The barrel of the .30-06 rifle had been cut down.

After advising Caldwell of his Miranda[2] rights, Officer Peter Joyce spoke to him. Caldwell was concerned about his son and wanted to know what had happened to him. Officer Joyce asked Caldwell if he had fired a gun inside the town house that night, and Caldwell said that he had shot three or four times. Caldwell said that he had shot the .45 caliber gun found outside while he was upstairs. And, he said he shot once from a rifle that he had retrieved from the garage. Caldwell stated that he shot the rifle while he was downstairs. When asked why he shot the weapons, Caldwell said that people who wanted to harm his son were in the attic and floorboards.

Caldwell was charged with unlawful possession of a controlled substance, methamphetamine, reckless endangerment, and four counts of unlawful possession of a firearm in the first degree. At trial, Caldwell testified that he was not on the lease for the town house and he was living there temporarily to help his friend clean it. Consequently, he argued that the State could not show that he possessed the firearms or the methamphetamine.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

Caldwell was convicted of unlawful possession of methamphetamine, reckless endangerment, and three of the four counts of unlawful possession of a firearm. He appeals.

## DISCUSSION

Caldwell contends that there was insufficient evidence to support his three convictions for unlawful possession of a firearm. He also argues that there was insufficient evidence to establish unlawful possession of methamphetamine and reckless endangerment. He contends that his trial counsel provided ineffective assistance by failing to request an unwitting possession instruction. And, he asserts that the State committed prosecutorial misconduct by shifting the burden of proof, commenting on his silence, vouching for the credibility of its office, and arguing facts not in evidence. In a statement of additional grounds, Caldwell contends that the forensic investigator was not credible, that his 911 calls were not investigated, and that the State and defense counsel suppressed evidence.

### I. Unlawful Possession of Firearms

Caldwell argues that there was insufficient evidence to support his convictions for unlawful possession of a firearm. He contends that as a guest in the residence, he did not have dominion and control over any part of the residence such as would establish constructive possession. And, he argues that his temporary possession of the .45 pistol and the .30-06 rifle was based on necessity.

In reviewing the sufficiency of the evidence, the question for this court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a

reasonable doubt. State v. Joy, 121 Wn.2d 333, 338-39, 851 P.2d 654 (1993). All reasonable inferences are drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn therefrom. Id.

Caldwell argues that he did not have dominion and control over any part of the town house such as would support constructive possession of the .308 caliber rifle, which Caldwell never fired.[3] He contends that his mere proximity to the firearm or knowledge that it was in the residence is insufficient to establish constructive possession.

Possession of property may be actual or constructive. State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Actual possession means that the item is in the person's custody. Id. Possession entails actual control, not a passing control or momentary handling. Id.

Constructive possession means that while the person does not actually physically possess the item, the person has dominion and control over it. Id. For purposes of constructive possession, the person's control need not be exclusive, but the State must show more than mere proximity. State v. Raleigh, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010). When determining whether a person has dominion and control over an item, we examine the totality of the circumstances.

---

[3] Caldwell contends that there was insufficient evidence to support unlawful possession of the two firearms that he never fired. But, Caldwell was acquitted on Count III, unlawful possession of a .38 Taurus revolver. Therefore, we do not address whether sufficient evidence supported that charge.

State v. Summers, 107 Wn. App. 373, 384, 28 P.3d 780, 43 P.3d 526 (2001). If a person has dominion and control over the premises, there is a rebuttable presumption that the person also has dominion and control over items on the premises. Id. Factors indicating dominion and control include whether the person has the ability to reduce the object to actual possession and physical proximity to the object. State v. Chouinard, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). Knowledge of the item's presence alone is insufficient. Id.

Here, Caldwell was living in the town house temporarily with his son, with plans to move to Texas soon. Caldwell testified that he became aware that there were guns in the house when he was cleaning the garage about a day before this event. Two mattresses in the garage were in Caldwell's way, so he moved them and noticed two rifles in between the mattresses. Then, on the day in question, Caldwell retrieved the .30-06 rifle from the garage. He shot the rifle. Afterward, Caldwell returned the .30-06 to the garage, placing it back behind the mattress, and behind the .308 rifle. Ammunition for the .308 rifle was found on the floor of bedroom two. Viewing this evidence in the light most favorable to the State, a reasonable jury could conclude that Caldwell had constructive possession of the .308 rifle. Caldwell was living in physical proximity to the .308, knew where it was, and could have just as easily reduced the .308 rifle to actual possession as he did the .45 pistol and the .30-06 rifle.

And, the State proved that Caldwell physically possessed the .45 pistol and the .30-06 rifle, as he shot both in the town house. Officers found spent ammunition for both firearms in the town house. Caldwell took the .45 pistol out of

the town house and laid it on the ground, where officers found it upon their arrival. Viewing this evidence in the light most favorable to the State, a reasonable jury could conclude that Caldwell had actual possession of the .45 pistol and the .30-06 rifle.

Even so, Caldwell argues that his temporary possession of the .45 pistol and the .30-06 rifle was necessary. Necessity is a valid defense to the crime of unlawful possession of a firearm. State v. Jeffrey, 77 Wn. App. 222, 226, 889 P.2d 956 (1995); State v. Stockton, 91 Wn. App. 35, 44, 955 P.2d 805 (1998). To demonstrate necessity, the defendant must establish that:

> (1) the defendant reasonably believed he or another was under unlawful and present threat of death or serious physical injury, (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct, (3) he had no reasonable alternative, and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

State v. Parker, 127 Wn. App. 352, 354-55, 111 P.3d 1152 (2005).

Here, the trial court instructed the jury on necessity. Thus, the jury was able to weigh the evidence to determine whether Caldwell proved by a preponderance of the evidence that his possession of the firearms was necessary. Caldwell knew of the firearms prior to any potential threat in the town house. Caldwell armed himself with the .45 pistol and with the .30-06 rifle. While Caldwell testified that he did so because he heard intruders coming into the town house from the attic, there was no verification that intruders actually came into the residence. In fact, the landlady of the property testified that while there is a crawlspace in the unit, it is not accessible from outside the unit.

Given this evidence, a reasonable jury could have concluded that Caldwell did not have a reasonable belief of a threat of death or serious physical injury. We conclude that sufficient evidence supports Caldwell's convictions for unlawful possession of the .308 rifle, the .45 pistol, and the .30-06 rifle.

## II. Unlawful Possession of Methamphetamine

Caldwell similarly argues that there was insufficient evidence to establish unlawful possession of methamphetamine. He compares this case to State v. Cote, 123 Wn. App. 546, 96 P.3d 410 (2004). In Cote, the defendant was the passenger in a truck that contained a syringe and the components of a methamphetamine lab. Id. at 548. The Court of Appeals held that evidence that Cote was at one point a passenger in the truck and had touched the contraband did not establish dominion and control. Id. at 550.

Caldwell's temporary living situation in the town house is distinguishable from Cote's status as a passenger. Caldwell testified that he and his son slept in one of the rooms, and he moved a bed upstairs. The officers who investigated the town house stated that only one of the bedrooms, bedroom one, contained a bed. In bedroom two, there was a desk which contained documents with Caldwell's name on them. Bedroom two also contained a backpack that had Caldwell's son's clothes in it and a document with Caldwell's name on it. And, Caldwell demonstrated a belief that he could exclude others from the town house, as he armed himself to keep intruders out. This evidence is sufficient to establish Caldwell's dominion and control over the town house, which creates a rebuttable

8

presumption that Caldwell also had dominion and control over items found on the premises. See Summers, 107 Wn. App. at 384.

Officers found the methamphetamine in bedroom one. Caldwell did not rebut the presumption of dominion and control over the methamphetamine. Viewing this evidence in the light most favorable to the State, a reasonable jury could conclude that Caldwell had constructive possession of the methamphetamine. Sufficient evidence supports this conviction.

III. Reckless Endangerment

Caldwell argues that there was also insufficient evidence of reckless endangerment. He argues that the fact that his son was in the town house when he shot the firearms is insufficient to establish reckless endangerment.

A person commits the crime of reckless endangerment "when he or she recklessly engages in conduct not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person." RCW 9A.36.050(1). To convict a person of reckless endangerment, the State must prove beyond a reasonable doubt that the defendant knew of and disregarded a considerable risk of death or serious physical pain or injury, and that the defendant's conduct was a gross deviation from how a reasonable person would have acted. State v. Rich, 184 Wn.2d 897, 905, 365 P.3d 746 (2016). Thus, the mens rea has both a subjective and objective component: the defendant knew of a risk, and a reasonable person would have acted differently in the same situation. Id. at 904.

Caldwell asserts that this case is distinguishable from Rich. In Rich, the defendant was speeding in traffic while highly intoxicated. Id. at 900. And, her young nephew was in the front passenger seat. Id. at 900-01. Rich argued that this evidence was insufficient to support her reckless endangerment conviction, because she was not driving erratically and no harm was actually done. Id. at 908. But, the evidence showed that Rich knew that the legal blood alcohol limit is 0.08, and she was aware that she was tipsy. Id. at 909. And, it showed that she drove in traffic, with a young child in the front passenger seat, that she demonstrated signs of intoxication, and that her blood alcohol level was 0.183 to 0.188 about one hour after her arrest. Id. From this evidence, the court determined that a reasonable juror could have concluded beyond a reasonable doubt that both the subjective and objective components of reckless endangerment were satisfied. Id. at 910.

Here, the State argued during closing argument that the fact that Caldwell fired the high powered .30-06 rifle in a town house, with a small child in the house and neighbors next door, supported the reckless endangerment charge. The landlady of the town house, Kimberly Edwards, testified at trial. Edwards explained that the town houses are four-plexes, so the unit Caldwell was living in was connected to three other units. Unit B, the adjoining unit, was occupied on the day in question. The sisters who lived in unit B called Edwards that day about the shooting.

And, Officer Joyce testified that Caldwell told him that he shot the .30-06 rifle downstairs. Caldwell told Officer Joyce that when he shot the .45 pistol, he

was upstairs. Caldwell testified that when he fired the .45 pistol, his son was in the room with him. Conversely, he testified that when he was shooting the rifle, his son was in the house, but he did not clearly state whether his son was in the same room. Thus, the testimony was not clear that when Caldwell fired the .30-06 rifle downstairs, his child was downstairs, not upstairs.

Viewing this evidence in the light most favorable to the State, we conclude that sufficient evidence supports Caldwell's reckless endangerment conviction. A reasonable jury could have concluded that Caldwell's actions demonstrated the subjective awareness that he could likely injure someone other than his intended target and that a reasonable person would have acted differently.

## IV.   Ineffective Assistance

Caldwell asserts that his trial counsel was ineffective, because counsel failed to request an unwitting possession instruction for the possession of methamphetamine charge.

To succeed on a claim of ineffective assistance of counsel, the defendant must establish both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). We presume counsel to be effective. Id. The defendant must demonstrate that there was no legitimate strategic or tactical reason for counsel's action. Id.

Caldwell compares this case to State v. Thomas, 109 Wn.2d 222, 743 P.2d 816 (1987). In Thomas, the defendant was charged with attempting to elude a

police officer. Id. at 225. At trial, her theory of the case was that she was too intoxicated to have formulated the required wanton or willful disregard for the lives or property of others. Id. at 227. On appeal, Thomas argued that it was error for counsel not to request an instruction that the defendant can rebut circumstantial evidence of wanton or willful disregard. Id. This was so, because she presented evidence of her intoxication, which could have rebutted the inference of wanton or willful disregard. Id. The Supreme Court agreed, because the "to convict" instruction was not a correct statement of the law—it did not include the subjective component of the offense. Id. at 228. This omission permitted opposing counsel to argue conflicting rules of law to the jury. Id.

Caldwell argues that defense counsel in this case committed a similar error by failing to request an unwitting possession instruction. For a defendant to be convicted of unlawful possession of a controlled substance, the State must prove the nature of the substance and the fact of possession. State v. Bradshaw, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). Then, the defendant may prove unwitting possession as an affirmative defense. Id. This affirmative defense admits that the defendant committed the crime, but seeks to excuse the unlawful conduct. State v. Buford, 93 Wn. App. 149, 152, 967 P.2d 548 (1998).

Here, Caldwell's theory of the case was that the evidence did not establish dominion and control over the town house. But, were he to argue for an unwitting possession instruction, he would have had to concede possession of the methamphetamine. This would have weakened counsel's argument against possession of the firearms. Therefore, deciding not to propose an unwitting

possession instruction could have been a strategic choice. Caldwell has not overcome the presumption that counsel was effective.

## V. Prosecutorial Misconduct

Caldwell argues that the State committed prosecutorial misconduct by shifting the burden of proof, commenting on his silence, vouching for its own credibility, and arguing facts not in evidence. He contends that trial counsel provided ineffective assistance by failing to object to these comments.

To succeed on a prosecutorial misconduct claim, the defendant must show that the prosecutor's conduct was both improper and prejudicial, looking at the context of the entire record and the circumstances at trial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To establish prejudice, the defendant must prove that there is a substantial likelihood that the misconduct affected the jury's verdict. Id. at 442-43. Where the error could have been cured by a jury instruction that was not requested, reversal is not required. State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994). If defense counsel does not object to the prosecutor's comments, reversal is required only if the misconduct was so flagrant and ill-intentioned that no instruction could have cured the resulting prejudice. State v. Jackson, 150 Wn. App. 877, 883, 209 P.3d 553 (2009).

### A. Burden Shifting & Commenting on Silence

Caldwell argues that the prosecutor improperly shifted the burden of proof by commenting on his failure to testify to or call witnesses to testify to the identity of the true owner of the firearms. And, Caldwell argues that this argument impermissibly commented on his privilege against self-incrimination.

The prosecutor has wide latitude to argue reasonable inferences from the evidence. Thorgerson, 172 Wn.2d at 453. The State may comment on the quality and quantity of the evidence presented by the defense. State v. Anderson, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009). But, because the defendant has no duty to present evidence, the prosecutor generally cannot comment on the defendant's failure to present evidence. Thorgerson, 172 Wn.2d at 453.

In Caldwell's closing argument, counsel argued that mere proximity was not sufficient to establish dominion and control over the firearms. He argued, "If there were other people that resided in that unit--and I would submit that there were-- those were the people who those guns belong to. Not Mr. Caldwell." Counsel argued this was so, because it is unclear whether Caldwell had the ability to exclude those people from possession of the guns, because no one was interviewed by the police.

During the State's rebuttal closing argument, the prosecutor responded to Caldwell's argument about the true owner of the guns. The prosecutor stated,

> But then he tells you that the guns belong to other people who lived at the residence. He told you that. The guns didn't belong to my client. They belong to the other people. And there was no proof that he could exclude those other people from the guns. He said that. Did anyone testify?
>
> Think about that: When the defendant testified, did he say who the guns belonged to? No, he did not. And the officers don't know. Ms. Edwards doesn't know. Steve Mell, the forensic specialist, doesn't know. But we do know one thing: Who knew where the ammunition was? Mr. Caldwell. Who knew where the guns were? Mr. Caldwell. Who knew how to operate the guns? Mr. Caldwell. Who shot the guns? Mr. Caldwell.

14

Caldwell argues that the State's comments constituted burden shifting, similar to improper comments made in State v. Dixon, 150 Wn. App. 46, 207 P.3d 459 (2009). In Dixon, the defendant was stopped for driving with a suspended or revoked license. Id. at 49. The officer arrested Dixon and searched her purse. Id. The purse contained methamphetamine. Id. At trial, the officer testified that there was a passenger in Dixon's car, but the officer did not write down the passenger's name. Id. at 51. During closing argument, defense counsel argued that there was doubt as to Dixon's control over the purse, because there was an unknown person in the car. Id. at 52. The prosecutor responded to this argument in rebuttal closing argument:

> "I want to pose this question to you: Why didn't [Dixon] bring that passenger in to testify for her? She knew who he was. He was her friend, that's what Deputy Stewart said. . . . And if that passenger had anything at all to say, don't you think [Dixon] would have contacted him? She knew who he was. He was in her car. She didn't call him.
>
> "That passenger -- what they're suggesting is that passenger put the drugs in her purse, but there's no evidence of that whatsoever, whatsoever. . . . Did the defendant make any statement that 'he put that in my purse'? No. We didn't hear any of that testimony. There's nothing, absolutely nothing that indicates that that passenger had anything to do with this."

Id. at 52 (second alteration in original).

The State conceded that its statement that Dixon should have testified was improper. Id. at 58. Therefore, the sole question before the Court of Appeals was whether there was a substantial likelihood that the statement regarding Dixon's failure to testify affected the verdict. Id. The Court of Appeals concluded that there was, because the prosecutor's statements suggested that Dixon not only was

obligated to testify, but also needed to produce evidence of another person's guilt. Id. at 59.

At first glance, Dixon appears similar to the facts of this case. There, as here, the defendant argued that possession was not established, because the item may have belonged to someone else. Id. at 52. There, as here, the prosecutor pointed out the holes in the defendant's argument against possession. Id. However, the prosecutor's comments in Dixon did more than point out the holes in Dixon's argument. There, the prosecutor went so far as to suggest that Dixon was required to produce evidence, by testifying herself or calling the passenger as a witness, that the methamphetamine belonged to someone else. Id. at 59.

The same cannot be said of the prosecutor in this case. Here, the prosecutor merely laid out the evidence that responded to Caldwell's argument that the firearms belonged to someone else. He noted that no one—not the defendant, not the landlady, not the officers—testified that they knew whom the guns belonged to. But, Caldwell knew where the guns were, where the ammunition was, and how to operate the guns. And, Caldwell actually shot the guns. We conclude that these comments did not improperly shift the burden of proof onto Caldwell or comment on his silence, but instead responded to Caldwell's argument by highlighting the evidence that supported possession.

B.    Improper Vouching

Caldwell asserts that the prosecutor improperly vouched for the credibility of the State, implying that its case was impenetrable. He claims that the prosecutor

16

did so by arguing that there were many other police witnesses that the State could have called.

It is improper for a prosecutor to personally vouch for the credibility of a witness or indicate that evidence not presented at trial supports a witness's testimony. Thorgerson, 172 Wn.2d at 443. But, a prosecutor may argue an inference from the evidence. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). This court does not find prejudicial error unless it is clear and unmistakable that the prosecutor expressed a personal opinion. Id.

During Caldwell's closing argument, defense counsel stated that a lot of police officers arrived at the scene. He stated, "Most of the police officers didn't even testify in this case, that were there. How do we know that? Well, we know because we have only had a couple. And we know that other officers have been mentioned. They found a lot of the evidence, they just didn't testify."

The prosecutor responded to these statements during rebuttal closing argument: "You didn't hear from the officers. There were a lot of officers at the scene. I could have called about 12 more officers. But what did Steve Mell say? He said he took a picture of the item as it was found, where it was found. He didn't move anything."

Caldwell argues that these statements are similar to those in State v. Stith, 71 Wn. App. 14, 856 P.2d 415 (1993). In Stith, the prosecutor stated in rebuttal closing argument that the case would not have come before the jury if there was a problem with the police officers' actions. Id. at 17. The prosecutor went on, "Our system has incredible safeguards that would not allow a case like this to come to

court if somehow the police acted improperly. So the question of probable cause is something the judge has already determined before the case came before you today." Id.

The Court of Appeals held that these comments indicated to the jury that the defendant's guilt had already been determined, so the trial was a useless formality. Id. at 22-23. These comments constituted personal assurances from the prosecutor to the jury that the defendant was guilty. Id. at 23. Thus, the comments were so prejudicial that they could not be cured by objection and/or instruction. Id.

Here, the prosecutor's statements did not rise to the same level as those in Stith. The prosecutor did not imply that he personally believed in the strength of his case or in Caldwell's guilt. He did not indicate that the 12 officers who did not testify bolstered the State's credibility. Instead, this comment was a direct response to defense counsel's statement that many officers who found evidence were not called as witnesses. To respond to these criticisms in the State's case, the prosecutor pointed out that Mell, the forensic investigator, testified about all of the evidence found at the scene. Rather than vouch for Mell's credibility, the State merely brought this witness to the jury's attention and reminded the jury of the actions that Mell took. The prosecutor still allowed the jury to assess Mell's credibility independently. Consequently, we conclude that this comment did not constitute improper vouching.

## C.    Arguing Facts Not in Evidence

Caldwell further argues that the prosecutor committed prosecutorial misconduct by arguing facts not in evidence.  He argues that the prosecutor improperly suggested that there was a receipt for the gun.

In closing argument, the prosecutor reviewed the evidence that was found in the town house.  After noting that there was a rifle case on the ground next to rifle ammunition, the prosecutor stated, "There's a gun receipt.  The gun receipt is Welcher's Gun Shop, right on the floor, right next to the ammunition."

No witnesses discussed a gun receipt during their testimony.  However, the State's exhibit 24 was admitted into evidence.  Exhibit 24 consisted of color photographs of bedroom two.  This packet contains a photograph of a Welcher's Gunshop receipt.  Consequently, the gun receipt was in evidence, and the prosecutor did not commit misconduct in mentioning it.

We see no error in any of the prosecutor's comments.  Therefore, Caldwell's claim that defense counsel provided ineffective assistance by failing to object to these comments must also fail.

## VI.    SAG Issues

In a statement of additional grounds (SAG), Caldwell contends that the forensic investigator, Mell, was not credible.  In support of this argument, Caldwell points to Mell's response when asked if any traces of blood were found at the scene: "I don't think there was.  I don't recall."  But, credibility is an issue for the trier of fact, and we do not review credibility determinations on appeal.  State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).  The jury had the opportunity

to observe Mell and determine whether he was credible. Therefore, we do not address whether Mell was credible.

Caldwell also argues that the State and defense counsel failed to investigate exculpatory evidence: his 911 calls and the fact that intruders were found dead in the town house. But, the record on appeal contains no mention of Caldwell making a 911 call or any intruders being found in the town house, so we cannot consider these allegations. See State v. Kinzle, 181 Wn. App. 774, 786, 326 P.3d 870 (2014) (noting that on direct appeal, this court cannot consider allegations based on matters outside the record). If evidence outside the record supports these contentions, Caldwell's proper recourse is to file a personal restraint petition. See State v. Alvarado, 164 Wn.3d 556, 569, 192 P.3d 345 (2008); RAP 16.4.

We affirm.

_Appelwick, J_

WE CONCUR:

_Trickey, ACJ_        _Cox, J._