[No. 35285-7-I.    Division One.    July 22, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v.
CHRISTOPHER T. CARLETON, *Appellant*.

*Ralph Hurvitz,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Ryan, Deputy,* for respondent.

BECKER, J. — Christopher Carleton was convicted of third degree rape of a teenage boy (A) he had befriended. Carleton had also engaged in sexual conduct with two other teenage boys (B and C). Under the common scheme exception to ER 404(b), the trial court admitted evidence of sexual contact between Carleton and one of the other boys. We affirm. The court erred in failing to balance probative value against prejudice on the record, but the error was harmless.

Carleton initially became friends with A, the boy

involved in the charged conduct, when Carleton was 18 and A was slightly more than four years younger. They were both members of a youth music group. In a conversation with A early in their friendship, Carleton claimed to have a homosexual alternate personality. Some months later, according to A, Carleton molested A on two separate occasions when Carleton was staying overnight in A's home and A was ostensibly asleep. On both occasions, Carleton approached A and sucked on his penis. The younger boy testified that he feigned sleep because he did not want to recognize what was happening, and that he thrashed about to try to get Carleton to stop.

A and Carleton remained friends. With A's encouragement Carleton became a member of a youth service organization in which A was a member. Carleton then befriended B, another member of that same youth organization, and eventually had sex with him. B was 16.

Eventually, upon learning that Carleton had applied to become an adult advisor to the youth organization, A disclosed what had happened between them. These disclosures were the basis for two charged counts of third degree rape.

The State announced its intention to introduce evidence that Carleton had a scheme to "groom" younger teenage boys for sex. According to the State, Carleton's scheme involved meeting and befriending younger boys within youth organizations, talking with the boys about his supposed alternate homosexual personality by way of introducing sexual topics, and then initiating sexual contact with each boy when the boy was asleep.

Carleton moved in limine under ER 404(b) to exclude evidence of these prior sexual acts. The court held a hearing. The State outlined the anticipated testimony. B's testimony would show that he consented to having oral and anal sex with Carleton after Carleton told him it would help to bring the two personalities together and prevent the "bad" personality from taking over. The State also wanted to present the testimony of C, another young

member of the youth organization. C would describe how Carleton, who was spending the night at C's home, attempted to initiate sexual contact while C was asleep.

The court excluded evidence of the attempted molestation of C because it did not involve the ruse of the alternative personality and, in the court's judgment, would merely tend to prove propensity. The court ruled that B's testimony could be presented as evidence of a common scheme.

The trial proceeded. Cross-examination of A established certain distinctions between Carleton's sexual conduct with A and B. With B, intercourse was consensual; with A it was not. Carleton had specifically induced B to have sex with him by explaining it would help to reunite his two personalities. With A he had merely discussed the alternate personality's existence some months before.

After A finished testifying, Carleton renewed his objection to the imminent testimony of B, arguing that there was insufficient evidence that Carleton had employed a common scheme with both boys. The court held to its earlier ruling and allowed B to testify. The jury convicted Carleton on one count and acquitted him on the other.

Carleton appeals, assigning error to the admission of B's testimony.

## Common Scheme or Plan

■ ■ A defendant's other acts are admissible for the purpose of showing a "plan"—a purpose permitted by ER 404(b)—when evidence shows that the person "committed markedly similar acts of misconduct against similar victims under similar circumstances."[1] The trial court does not itself make a factual finding of a common scheme or plan. The court decides whether the evidence is sufficient to allow a jury to conclude there was a common

---

[1]*State v. Lough*, 125 Wn.2d 847, 852, 889 P.2d 487 (1995).

scheme or plan.[2] The "prior conduct must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations."[3] At issue here is whether a rational factfinder could conclude that Carleton's pursuit of both A and B involved a common scheme.

We agree with the trial court that Carleton engaged in markedly similar conduct with A and B. In each case, Carleton met a teenage boy through a youth organization, befriended him, and eventually had sex with him after describing himself as having a homosexual alternate personality. The unusual story about the alternative personality laid the groundwork for future sexual overtures, not unlike the defendant's use of drugs in *Lough* to overcome the resistance of his victims. Carleton's repetition of the device in similar contexts showed that he consciously recognized its seductive appeal to the curiosity of younger boys. A rational factfinder could well have concluded that Carleton's conduct was directed by design.[4] There was no abuse of discretion in determining that B's testimony would tend to establish a common scheme or plan.

### Failure to Balance on the Record

Finding the evidence sufficient to support the existence of a common scheme is not the end of analysis under ER 404(b). The court must also analyze the relevance of the evidence and in addition consider its prejudicial impact. "Evidence of prior misconduct is likely to be highly prejudicial, and should be admitted only for a

[2]*Lough*, 125 Wn.2d at 852.

[3]*Lough*, 125 Wn.2d at 860.

[4]*Lough*, 125 Wn.2d at 861.

proper purpose and then only when its probative value clearly outweighs its prejudicial effect."[5]

The court's balancing of the prejudicial nature of ER 404(b) evidence must take place on the record.[6] Carleton contends the court failed to weigh the probative value of B's testimony against its prejudicial nature. And indeed the record here is inarticulate as to the required balancing.

In *State v. Powell*,[7] the trial court did not explicitly weigh the probative value against prejudice of the defendant's prior acts. The Supreme Court, observing that the trial court had admitted some acts of prior misconduct while excluding the acts which were most inflammatory, concluded that the record as a whole showed the court had fulfilled the requirements of the rule.[8] Where the record reflects that the trial court has adopted the express argument of one of the parties as to the relative weights of probative value and prejudice, there is likewise no error.[9] But these variations serve to reinforce the general rule stated in *State v. Tharp*: the record must in some way show that the court, after weighing the consequences of admission, made a "conscious determination" to admit or exclude the evidence.[10]

Here, as in *Powell*, the court carefully sorted through the State's proffered evidence, and did not admit all of it. But the court focused solely on the probative value of B's testimony, and its relevance to prove the charged misconduct against A. As in *Tharp*, the record does not reflect that the court considered how prejudicial the challenged testimony would be. As in *Tharp*, this was error.

---

[5]*Lough*, 125 Wn.2d at 862.

[6]*State v. Powell*, 126 Wn.2d 244, 264-65, 893 P.2d 615 (1995).

[7]*State v. Powell*, 126 Wn.2d 244, 893 P.2d 615 (1995).

[8]*Powell*, 126 Wn.2d at 264-65.

[9]*State v. Pirtle*, 127 Wn.2d 628, 650-51, 904 P.2d 245 (1995), *cert. denied*, 135 L. Ed. 2d 1084 (1996).

[10]*State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981).

The Supreme Court has stated, "We cannot overemphasize the importance of making such a record."[11] The process of articulating the prejudice, and comparing it to probative value, ensures a "thoughtful consideration" of their relative weight.[12]

Prior misconduct evidence is inherently prejudicial.[13] Inherent in B's testimony was the prejudicial inference that Carleton had a propensity to initiate sexual intercourse with younger boys. From the record before us, we simply cannot be sure that the trial court thoughtfully evaluated the prejudicial impact that B's testimony was inevitably going to bring to the trial.

### Harmless Error Analysis

■■ A failure to articulate the balance between probative value and prejudice does not necessarily require reversal. Any error in the admission of prior misconduct evidence is harmless unless the reviewing court finds that "within reasonable probabilities . . . the outcome of the trial would have been different if the error had not occurred."[14]

There are at least two different circumstances in which the failure to weigh prejudice on the record under ER 404(b) is harmless error. The first is when the record is sufficient for the reviewing court to determine that the trial court, if it had considered the relative weight of probative value and prejudice, would still have admitted the evidence.[15] On this record we cannot make that determination.

The second circumstance is when, considering the untainted evidence, the appellate court concludes the

---

[11]*State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

[12]*Jackson*, 102 Wn.2d at 694; *State v. Gogolin*, 45 Wn. App. 640, 645, 727 P.2d 683 (1986).

[13]*Lough*, 125 Wn.2d at 863.

[14]*Jackson*, 102 Wn.2d at 695.

[15]*Gogolin*, 45 Wn. App. at 645-46.

result would have been the same even if the trial court had not admitted the evidence.[16]

After excluding the allegedly inadmissible testimony of B, substantial and unrebutted proof remains that Carleton had sex with A. Two of Carleton's acquaintances testified that he talked to them about it. Carleton told one of them that he had twice initiated oral sex on A in the fall of 1990 while A was asleep in his house. A's own testimony was detailed with respect to all the elements of the crime.

The jury convicted on only one of the two charged counts. Carleton argues that the split verdict shows an underlying weakness in the State's case, and that the jury may have acquitted altogether in the absence of B's testimony. We disagree. A more likely explanation is that A's testimony placed only one of the incidents clearly within the charging period. Accordingly, the split verdict is not a factor in our harmless error analysis.

We conclude the jury would have decided the case no differently if the trial court had excluded B's testimony. The error in failing to balance on the record was harmless.

## Inferential Opinion as to Truth

Carleton also assigns error to admission of certain testimony by the adult advisor of the youth organization.

Carleton, in opening statement, asserted that the youth service organization's denial of his application for an adult-advisor position reflected prejudice against homosexuals. The court judged it proper to allow the State to rebut this allegation by eliciting testimony from a representative of the organization that Carleton's sexual preference was *not* the reason for the denial. The prosecutor then asked if there was another reason. Over objection, the witness answered yes. Carleton contends this limited

---

[16]*Jackson*, 102 Wn.2d at 696; *State v. Thamert*, 45 Wn. App. 143, 151-52, 723 P.2d 1204, *review denied*, 107 Wn.2d 1014 (1986).

answer necessarily informed the jury that the witness endorsed the truth of A's accusations. We find no abuse of discretion here, as the answer was wholly unrevealing.

Affirmed.

BAKER, C.J., and WEBSTER, J., concur.

Reconsideration denied September 23, 1996.