FILED
COURT OF APPEALS
STATE OF WASHINGTON

2018 FEB -5 AM 9: 28

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 74998-6-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSHUA DAVID LARSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 5, 2018 |
| | ) | |

APPELWICK, J. — Larson was convicted of molesting his three year old niece. Larson argues that the trial court abused its discretion when it admitted evidence that on five prior occasions he had molested other young girls. We affirm.

## FACTS

On Thanksgiving Day in 2013, Joshua Larson attended a gathering of relatives at his parents-in-law's home in Stanwood, Washington. That afternoon, Larson's three year old niece, E.V., told her mother " 'I wish Uncle Josh would stop touching my bottom.' " E.V.'s mother, Larson's sister-in-law, asked Larson why E.V. would say that she was touched. Larson initially indicated that he did not know what E.V. was talking about, but told E.V. that he was sorry if he had hurt her or made her feel uncomfortable.

The next morning E.V.'s parents asked E.V. further about what she had reported. When they asked where Larson had touched her, E.V. replied, " 'where my pee pee comes out.' " When asked to show her mother with a doll where

Larson had touched her, E.V. pointed to the doll in the front vaginal area. E.V. said that it happened on the bed in the sewing room, with the door open, and when she was alone with Larson.

Later, Larson told his wife, parents-in-law, and E.V.'s parents his version of what happened. He said that on Thanksgiving Day, E.V. had gotten her leg stuck in the cot in the sewing room, and when he reached to pick her up he must have touched her bottom.

On December 6, Marissa Hughes of Oregon's Department of Human Services interviewed E.V. at E.V.'s home in Oregon City, Oregon. Hughes later testified that E.V. told her that Larson had touched E.V. underneath her clothes while she was on the bed, when they were alone. Hughes also testified that E.V. told her that Larson kept saying sorry while he touched her.

On December 9, E.V was taken to the Children's Center, a clinic that sees children of suspected abuse, in Oregon City. Family Nurse Practitioner Christine Smith examined E.V. Child Forensic Interviewer Susan Lewis also interviewed E.V. at the Children's Center. The State described these interviews, as well as previous sex offense allegations against Larson, in its affidavit for probable cause to support an arrest warrant.

Larson was charged with one count of first degree child molestation. Before trial, the State sought to introduce evidence under ER 404(b) that Larson had sexually abused other young girls. The State asked the court to admit the evidence as proof of a common scheme or plan, and as proof of absence of mistake by the

defendant. The State also asked the court to admit the acts to show that Larson touched E.V. for his sexual gratification. Larson objected. The trial court ordered an evidentiary hearing. The court heard testimony from S.A., L.C., and C.S., three witnesses whom the State planned to have testify at trial on the alleged prior incidents.

S.A. testified that she was nine years old at the hearing. S.A.'s family and Larson's family had been friends. S.A. testified that one time she told Larson about a rash that she had on her private part and Larson took her into his bedroom, pulled down her pants, and orally raped her. She also testified that another time when she was spending the night at Larson's home, Larson touched her over her pajamas, on top of her "jammy pants."

L.C. testified that she was 29 years old at the hearing. When L.C. was around what she believed to be between the ages of six and eight, her sister dated Larson. During this time, L.C. slept over at the home where Larson and L.C.'s sister lived. L.C. was lying on the couch when she saw Larson leave his bedroom naked, put on L.C.'s sister's robe, and then stand by the couch with his robe open. L.C. testified that Larson then touched her vagina, over her clothes, while he touched himself. L.C. also testified about another time that she stayed with her sister and Larson. L.C.'s sister asked L.C. to sleep in the bed with her and Larson. L.C. testified that Larson touched her vagina over her clothes, while her sister was sleeping.

C.S. testified that she was 10 years old at the time of the hearing. She described an incident that occurred in a swimming pool in Port Angeles. C.S. was at the pool with her dad, sister, and brother. She testified that while she was in the pool she started playing ring toss with a man. Each time C.S. returned a ring to the man, he touched her lower private area over her swimsuit, with his finger. The man was identified as Larson.

After the hearing, the trial court granted the State's motion to admit the evidence under 404(b). The court found that the State had established each alleged prior incident by a preponderance of the evidence. It found that the evidence established a common scheme or plan: "it establishes the Defendant committed markedly similar acts of misconduct against similar victims under similar circumstances and the nature of the similarities are such as to demonstrate a common scheme or plan." It concluded that the common scheme or plan was relevant in this particular case because of Larson's general denial that the act occurred. The court noted that Larson was alleged to have touched E.V.'s vagina for sexual purposes. Therefore, it found that evidence of his six sexual acts with four young girls "ha[s] a tendency to prove in this case that the touching was not by accident or mistake and that the purpose or intent was for sexual gratification." Finally, the court noted that these other incidents are prejudicial, but found that the probative value outweighed the prejudicial value.

A jury convicted Larson of child molestation in the first degree. He was sentenced to 68 months of imprisonment. Larson appeals.[1]

## DISCUSSION

Larson argues that the trial court abused its discretion by admitting into evidence five other sex offense allegations, violating his right to a fair trial. Larson asserts that, because of the trial court's erroneous ER 404(b) ruling, this court should reverse and remand the case with instructions to exclude the evidence of prior misconduct.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity with that character. ER 404(b); State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Evidence of prior misconduct may be used to show a common scheme or plan. Gresham, 173 Wn.2d. at 421. A common scheme or plan may be established by evidence that shows the defendant committed markedly similar acts of misconduct against similar victims under similar circumstances. State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995). The similarity between the prior acts and the charged crime need to be substantial, but there is no requirement that they are unique. State v. DeVincentis, 150 Wn.2d 11, 19, 74 P.3d 119 (2003). Evidence of such a plan is admissible if the prior acts are (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common

---

[1] The State also filed a cross appeal. However, in its brief it does not assign any errors to the trial court, and asks this court to affirm Larson's conviction.

plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial. Lough, 125 Wn.2d at 852.

Provided the trial court has interpreted an evidentiary rule correctly, we review the trial court's determination to admit or exclude evidence for an abuse of discretion. Gresham, 173 Wn.2d at 419. Here, in its oral ruling, the trial court properly interpreted each of the four factors from Lough. We take each of Larson's challenges in turn.

I. Preponderance of the Evidence

First, Larson contends that the State did not establish the prior acts by a preponderance of the evidence. And, Larson argues the trial court abused its discretion in ruling that conduct for which Larson was acquitted, to which C.S. testified, could be used against him.

The party offering the evidence of prior misconduct has the burden of proving by a preponderance of the evidence that the misconduct actually occurred. Lough, 125 Wn.2d at 853. A court's preponderance determination will be upheld if it is supported by substantial evidence. State v. Baker, 89 Wn. App. 726, 732, 950 P.2d 486 (1997).

Here, the trial court heard testimony from each of the complaining witnesses of the prior bad acts. It found that each witness was able to testify clearly and coherently about each of the alleged incidents. The State also produced each complaining witness's prior interviews, which were done closer to the time of the alleged acts. The trial court found that the witnesses were "remarkably consistent

between their prior renditions and those here in this courtroom." And, the State produced police reports and discovery, which indicated that other witnesses or family members verified that each of the complaining witnesses was with Larson at the time the alleged touching occurred. The discovery also showed that each witness had made a prior complaint to family members or authorities.

Larson argues that the trial court erred in admitting evidence for which Larson was acquitted. But, evidence is not barred simply because it relates to alleged criminal conduct for which a defendant has been acquitted. State v. Stein, 140 Wn. App. 43, 62, 165 P.3d 16 (2007) (similar act evidence is admissible under ER 404(b) where the State does not have to prove the evidence beyond a reasonable doubt).

We conclude that there was substantial evidence before the trial court that established each alleged incident.

II.    Common Scheme or Plan

Larson also contends that the six alleged acts did not constitute a common scheme or plan. He argues that the trial court saw similarities where there were none and ignored meaningful differences. First, he argues that these were not markedly similar acts. He highlights that one of the incidents with S.A. involved oral rape, and argues that this is "significantly different from the passing touching" that was alleged to happen with E.V. He argues that the amount of time between each act was different, ranging from a few seconds to approximately five minutes. Second, he argues that these were not similar victims, because (1) Larson's son

was present during the alleged oral rape of S.A., (2) the victims ranged in ages from three to nine, and (3) C.S. was a stranger, not a family member or someone with whom Larson had any prior relationship. Third, he argues that these were not similar circumstances. The incident with C.S. took place in a public pool, while the others happened in a residence. And, he argues that the nearby presence of adults does not indicate a design by Larson.

The similarities between the prior acts and the charged crime need to be substantial, but the acts do not need to be identical. DeVincentis, 150 Wn.2d at 20-21; State v. Kennealy, 151 Wn. App. 861, 887, 214 P.3d 200 (2009). The prior misconduct and the charged crime should share common features such that the acts are naturally explained as caused by a general plan of which each act is simply an individual manifestation. Gresham, 173 Wn.2d at 423. It is helpful to consider other cases in which ER 404(b) evidence was properly admitted due to a common scheme or plan.

In Gresham, Scherner was charged with sexually molesting his granddaughter when she was seven or eight years old. 173 Wn.2d at 414. On three different nights, Scherner touched her vagina. Id. at 414-15. On the third night, he also placed her hand on his genitals. Id. at 415. The trial court admitted the testimony of four prior victims as evidence of a common scheme or plan. Id. Two of the prior victims were his nieces. Id. When the nieces visited his home, he fondled them and performed oral sex on them. Id. Scherner abused one niece for around 15 years, beginning when she was 4r or 5 years old. Id. He abused

the second niece when she was 13. Id. The third victim was a 13 year old daughter of a friend, and the fourth victim was another one of Scherner's granddaughters. Id. The Supreme Court affirmed the trial court's finding of a common scheme or plan. Id. at 422. It found that, despite some differences, such as the presence of oral sex and that the abuse took place in and out of Scherner's home, the differences did not dissuade a reasonable mind from finding that the instances were individual manifestations of the same plan. Id. at 423.

In Kennealy, the defendant raped and molested 3 children between the ages of 5 and 7 who lived in the same apartment complex. 151 Wn. App. at 868. The trial court admitted evidence of prior bad acts involving Kennealy's daughter and 3 of his nieces, who were between the ages of 7 and 13. Id. at 875-76. Kennealy told 1 of the victims from the charged crimes, and some of the previous victims, not to tell anyone about what happened. Id. at 889. Kennealy committed the prior and charged acts out of view of others or alone with the children. Id. He touched the girls on their vaginas both under and outside of their clothing. Id. This court held that, even though Kennealy's behavior in each case was not identical, the trial court did not abuse its discretion in finding that evidence of the prior acts was admissible as part of a common scheme or plan. Id. at 888.

This court has also held that evidence of prior misconduct was admissible to show a plan or scheme to molest in State v. Sexsmith, 138 Wn. App. 497, 157 P.3d 901 (2007). There, the court found a plan or design where each time

Sexsmith molested children, he isolated them, and he was in a position of authority as a father or caretaker. Id. at 505.

A. Similar Acts

In this case, Larson is correct that the extent of the abuse is different in the charged crime and among the prior acts. There is evidence that Larson touched E.V. But, there was an incident of oral rape with S.A. And, L.C. testified that Larson exposed himself while touching her. Even so, the trial court found marked similarities between each act:

> In each of the other incidences [sic], as well as the alleged charge, [Larson] is alleged to have sexually touched only one place on the child, the vagina or that area. In all but one instance, there was touching only with a finger. In that one instance where there was the use of something other than the finger, the victim had actually discussed the vagina and, therefore, there would have been a reasonable explanation for [Larson] looking in her vaginal area.
>
> . . . .
>
> In each incidence [sic], the touching was for a very short period of time. They ranged from a few seconds to approximately five minutes, short enough so as to not draw attention of those nearby. . . . [A]nd in each incident there was no penetration or any use of physical force that would leave a mark on the victim or any physical evidence.[2] . . .
>
> With each alleged victim, there was touching on either only one or two occasions, a very limited number of touchings [sic] per victim.

---

[2] Larson argues that the trial court, in finding that none of the incidents involved force, ignored that L.C. described Larson's behavior as "aggressive" and that he "ripped" the blanket off her. The trial court, however, indicates here that Larson did not leave physical marks on any of the victims.

These acts were not sufficiently different so that a reasonable mind could not find similarities between the act involving E.V. and those involving the other three witnesses.

### B. Similar Victims

Larson then argues that the victims are not similar as to show a common scheme or plan. In Gresham, the victim was 7 or 8, and the additional witnesses were between 4 and 13 when the abuse began. 173 Wn.2d at 414-15. In Kennealy, the victims were between 5 and 13. 151 Wn. App. at 868, 876.

The trial court here considered the age range. It found the victims were similar:

> They were all young enough so that it was likely that they may not understand sexual matters and young enough to be confused about what may have been happening should they be touched briefly in a sexual manner. They were also all of an age -- and this is between the ages of 3 and 9 -- when they would still likely be quite compliant with adult authority and still may not be outspoken against an adult who would confront and indicate a different story than their own.

Larson's reliance on the girls' age difference, from ages 3 to 9, is not persuasive in light of Gresham and Kennealy.

Larson also notes that Larson's son was present during the oral rape of S.A. This is not fatal to the common scheme or plan because the nature of what Larson did to the testifying witnesses and E.V. is what unifies them as similar victims. If Larson's son was present during the act with S.A. it does not take away from the similarity of the other victims. Further, in Kennealy, two of the charges involved female victims, while another involved a male victim, and the court affirmed the trial court's admission of prior acts that solely involved girls. 151 Wn. App. at 889.

And, Larson states that C.S. stands out from the other victims as a stranger, and not someone Larson had previously known. In Kennealy, the victims in the charged crimes were either living in the defendant's apartment complex, or visiting the complex. 151 Wn. App. at 868. Kennealy contacted and abused the victims either on the playground, on the stairs outside of his apartment, or in his apartment. Id. at 872, 874. The victims in the prior acts evidence were his daughter and three of his nieces. Id. at 875. The court found that, despite the differences between the prior acts and the incidents charged, there were common features that showed a plan to sexually abuse young children. Id. at 888. Following the reasoning of Kennealy, here, the trial court did not abuse its discretion in finding that the victims were substantially similar.

C. Similar Circumstances

Larson next argues that these were not similar circumstances. In particular, he differentiates the public pool setting of the act with C.S. from the other acts.

Again, in Kennealy, some of the acts occurred on a playground, while some occurred inside in either Kennealy's apartment or the apartment of the victim. 151 Wn. App. at 874-76. In Gresham, the court affirmed that the charged acts and the prior acts demonstrated a common plan, even though Scherner abused some victims in his home and some in hotel rooms. 173 Wn.2d at 415, 423. Here, the fact that one of the incidents took place in public while the rest took place in homes does not destroy a common scheme or plan.

And, the trial court noted similarities between the acts that showed a common scheme or plan to avoid detection. First, it noted that in every one of the incidents, there were third-parties either present or nearby. Second, that with each of the other alleged 404(b) victims, after a touching, Larson had other contact with the victim where no touching occurred. Third, it found that following each incident with each of the alleged prior complaining victims, Larson acted like nothing had happened. Fourth, that each of the alleged 404(b) incidents happened in a geographically distinct area, which would decrease the chances that any victim or family member might become aware of any similar complaints against Larson. It summarized the common scheme or plan:

> In short, the evidence combined shows a carefully crafted plan for obtaining sexual gratification not by grooming an alleged victim, but by touching a number of young girls while minimizing the chances of any incident being disclosed or, if disclosed, being believed or increasing the chances of there being a plausible explanation for an innocent touching. . . .
>
> It is, in short, a plan that went this way: Be sure that there is a good, separate explanation for being in physical contact with the child or proximity to the child; only touch the child on one or two occasions; only touch briefly, never penetrate; never use force or engage in any action that would leave any physical evidence; make sure others are around or nearby so if there is a complaint, it can be argued that they would have noticed; have other contact or interactions with the child where there is no improper touching, again to argue, well, if it was improper, it would have happened more often; right after it happens, act as if nothing had happened so that the victim, who is young and vulnerable, may not understand what has happened.

The trial court considered the similarities between the alleged acts, victims, and circumstances of the crimes. We affirm the trial court's finding of a common scheme or plan.

III.    Propensity

Larson contends that the trial court abused its discretion by allowing the prior bad act evidence to demonstrate propensity. He relies on State v. Saltarelli, 98 Wn.2d 358, 655 P.2d 697 (1982). He states that the same problem in Saltarelli exists below, because the trial court used the terms "intent" and "purpose" interchangeably. He contends that the trial court improperly admitted the evidence because one criminal offense cannot be used to establish a motivation to commit another similar offense, except by showing a propensity to commit that type of crime.

In Saltarelli, the defendant was convicted of second degree rape. 98 Wn.2d at 359. He did not deny having intercourse with the victim, but maintained that she consented. Id. Our Supreme Court held that evidence of a prior attempted rape was not properly admitted to show the defendant's motive or intent to rape. Id. Intent was not an issue in Saltarelli. Id. at 366. Since the State was not required to establish intent, the court held that the prior act evidence was not relevant, and therefore inadmissible. Id. at 366-67.

Saltarelli differs from this case. In a child sexual assault case where the issue is whether the crime occurred, a pattern of past behavior is probative of a plan to fulfill sexual compulsions. DeVincentis, 150 Wn.2d at 17-18. Here, Larson was charged with first degree child molestation. Intent was an issue because the State had to prove that Larson's contact with E.V. was "done for the purpose of gratifying sexual desires." The evidence was properly admitted and commented

14

on to show a pattern of touching for the purpose of sexual gratification. The court gave a limiting instruction to the jury that the evidence could not be considered to prove the character of Larson in order to show that he acted in conformity with the prior allegations. We find that the trial court did not abuse its discretion in admitting the evidence for a non-propensity purpose.

IV.   Prejudice Versus Probative Value

Finally, Larson argues that the trial court abused its discretion in admitting all of the prior acts without weighing the prejudicial effect of each act separately. He argues that the L.C. allegations were stale, the S.A. allegations were pending, and the C.S. allegations had been rejected by a jury. Then, he argues that it was unfairly prejudicial when the prosecutor invited the jury to find that Larson's criminal behavior was escalating, with the public assault of C.S.

Substantial probative value is needed to outweigh the prejudicial effect of ER 404(b) evidence. DeVincentis, 150 Wn.2d at 23. Legitimate factors to consider include the need for the evidence, the age of the victim, the secrecy surrounding sex abuse offenses, the vulnerability of the victims, the absence of physical proof, and the lack of confidence in the ability of a jury to assess the credibility of a child witness. Id.

Here, Larson does not initially cite to authority to support his assertion that the trial court erred in weighting the probative value of the prior acts together. A party must support the issues it presents for review with argument, citations to legal authority, and references to relevant parts of the record. RAP 10.3(a)(6).

Then, in his reply brief, Larson cites to State v. Carleton, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). In Carleton, this court found error when the trial court failed, on the record, to weigh the consequences of admitting ER 404(b) evidence and make a conscious determination to admit or exclude the evidence. Id. at 685-86.

In this case, the trial court weighed the consequences of the ER 404(b) evidence on the record. It noted that the prior incidents were prejudicial, and that there was danger the jury may use the evidence as propensity evidence. The court, however, went through a thorough explanation of why the probative value outweighed the prejudicial effect.[3] We find that the trial court weighed the prejudice against the probative value, and further, that the record supports that the probative value of the ER 404(b) evidence outweighs the prejudice.

Larson argues that L.C.'s allegations were stale. In Gresham, the court allowed evidence of past acts that occurred as far back as 32 years before the defendant's trial. 173 Wn.2d at 415. In Lough, the court found that when similar acts have been performed repeatedly over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan. 125 Wn.2d at 860. L.C. testified about acts that occurred in 1993 or 1994. The trial court did not abuse its discretion in finding that their probative value outweighed their prejudicial effect because of the common scheme.

---

[3] Further, a failure to articulate the balance between probative value and prejudice does not necessarily require reversal. Carleton, 82 Wn. App. at 686. It is harmless error if the record is sufficient for this court to determine that, if the trial court had considered the relative weight of probative value and prejudice, it would still have admitted the evidence. Id.

16

Larson contends that it was error to admit the S.A. allegations, which were pending at the time of trial. Larson moved for reconsideration of the ER 404(b) ruling as to S.A.'s allegations, on the basis that the acts involved unresolved charges. The trial court, in denying that motion, noted that the charges had been dismissed without prejudice. It found that it was not error to admit the evidence under 404(b), as crimes that had not been yet charged or litigated. The trial court also found S.A.'s testimony especially probative because "it is probably the clearest indication of an intent to garner sexual gratification by the Defendant." The court also noted that the S.A. incident was closer to the time of the incident with E.V. than the incident with L.C., and that it involved many of the similarities with the charged crime that would indicate a common scheme.

As discussed above, the court was not barred from admitting C.S.'s allegations, for which Larson was acquitted.

Larson argues next that the evidence was unfairly prejudicial where it suggested that Larson's criminal behavior was escalating. In Kennealy, the defendant's criminal behavior also changed from involving close relatives to children he did not know in his apartment complex. 151 Wn. App. at 868. Here, the evidence was within the parameters of Kennealy.

The trial court found that the prior acts demonstrated a common scheme or plan. It found that the evidence was relevant to prove that the touching was for the purpose of sexual gratification. And, the trial court found that the probative value of the evidence outweighed the prejudice.

17

We find that the prior acts were properly admitted under ER 404(b) for demonstrating a common scheme or plan.

We affirm.

WE CONCUR: