IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. ERICK BRANDON STRUTHERS, Appellant. | No. 85510-7-I DIVISION ONE UNPUBLISHED OPINION |

DÍAZ, J. — A jury convicted Erick Brandon Struthers of assault in the second degree for strangling his mother, Susan Struthers.[1]  Erick claims the trial court erred in admitting a partial recording of his arrest, in part because the recording included his statement that he had previously been in jail.  Erick also contends that the trial court erred in allowing law enforcement to testify that they had probable cause to arrest him.  We affirm.

I.      BACKGROUND

On January 27, 2023, Susan called 911, stating that her son Erick, who was living with her, was "out of control" and "threatening to commit suicide."  As she testified at trial, Erick then became "really angry," went into her room, and "put his

---

[1] For clarity, we refer to Erick Brandon Struthers and Susan Struthers by their first names.  No disrespect is intended.

hands around [her] neck" twice in quick succession.

Sheriff's deputies arrived at Susan's home, interviewed her, and examined physical evidence of strangulation and other injuries. She told them that she had a mark on her neck where Erick applied the pressure, her breathing was restricted, and she thought Erick was going to kill her. Deputy Joshua James testified that once he had seen her injuries and spoken with Susan, "probable cause was established."

The deputies then arrested Erick, whose interactions and volatile arrest were captured on two body worn cameras and which will be discussed below. The State charged Erick with assault in the second degree-strangulation (domestic violence). A jury convicted Erick as charged, and the court imposed a sentence of a term of incarceration of nine months to be followed by twelve months in community custody. Erick timely appeals.

## II. ANALYSIS

### A. Standard of Review

Each of Erick's assignments of error relate to evidentiary decisions the court made. "Decisions involving evidentiary issues lie largely within the sound discretion of the trial court and ordinarily will not be reversed on appeal absent a showing of abuse of discretion." State v. Nava, 177 Wn. App. 272, 289, 311 P.3d 83 (2013). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). "A trial court abuses its discretion if it improperly applies an evidence rule." Nava, 177 Wn. App.

at 289. "If evidence was improperly admitted, the court analyzes whether the improper admission was harmless." State v. Dillon, 12 Wn. App. 2d 133, 146, 456 P.3d 1199 (2020). Interpretation of an evidentiary rule is a question of law, which we review de novo. State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).

B. Body Camera Footage

1. Additional Background

The State moved to admit the entirety of the two deputies' body worn camera recordings. Erick cross-moved to exclude any evidence of his arrest or evidence to which ER 404(b) would apply. The court granted and denied both motions in part, admitting only excerpts of the body camera footage. The court allowed the State to show jury 32 minutes and 15 seconds of the 1 hour 35 minutes of raw footage at trial. The court found the videos were "simply too long," "too repetitive," and that "that repetitious presentation . . . swings it over from being probative to being prejudicial." But, the court found that the footage "demonstrates a heightened state of emotion," which the court would "describe [] as belligerent" as it reflects a "frame of mind [which is] probative to the State's case that he was assaultive." Rep. of Proc. (RP) at 120; see also RP at 394 ("because [his emotional state] goes on for a period of time, it is demonstrative of a particular frame of mind that . . . is probative).

Specifically, the footage shown to the jury first captured the initial discussion between Erick and the sheriff's deputies. Erick greeted them as they arrived outside Susan's home. Erick spoke to the deputies calmly when they first approached him. In those first few minutes, after explaining he had been drinking,

he asserted unprompted:

> "I haven't done anything wrong. . . . My mom's giving me a hard time; she's been playing games with me all day. I tried to set up my Wi-Fi but it's her Wi-Fi. . . . It's just a big game. . . . I have not laid a hand on my mom. I have not done anything to my mom."

Erick's counsel conceded at trial that these statements were properly admitted as statements against interest. See ER 801(d)(2).

Erick's behavior then fluctuates between calm statements and, as the court stated, heighted emotional statements about how frustrating his day had been in part because of computer issues. Most significantly, throughout the body camera footage, Erick also makes various emotionally charged statements about Susan, including:

- That he "already went to jail once for her," explaining that he believed he "was set up five months ago" and "sat five months in jail" because his "lawyer got bought off by the prosecutor's office" and "talked [him] into taking a plea from a second degree assault to a fourth degree assault," and because Susan "help[ed] them do this," He said that experience cost him $80,000.

- In discussing his computer issue, that "the argument [he] got into with my mom is that she keeps acting like she's a part of [the solution]."

- That Susan "wants [him] to go to treatment; that's all she says . . . she doesn't try to help me with my stuff or anything like— I work; I'm a worker . . . I'm losing so much money. . . . My mom . . . she's always done this to me my whole life, man."

- That he does not want to "hurt [his] mom. . . . She's been telling adult services this and that" and he's "sick of this going on. It's like dude – when people do certain things, [he] should be able to trust [his] mother and she's let all her friends fricken-like everybody had a key to [his] trailer."

- And, finally, he "admit[ted] [he] put [his] mom through some stuff with this computer shit."

Moreover, multiple times, Erick further indicated, again unprompted, that he did not want to or would not return to jail. Approximately 18 minutes into the video shown the jury, Erick emotionally decompensates when the deputies question him about the marks on his mother's neck and initiate his arrest. Multiple times during the arrest, he blames Susan for his arrest and claims his mother is lying about the assault because she wants or needs him to "go to treatment" or because she or the State wants his money.

2. Discussion

Erick asserts that "[t]he admission of the body camera recordings of Mr. Struthers' arrest was [a] unfairly prejudicial and [b] impermissible character evidence," that latter, in particular, because the court did not order the State "to redact that part of the recording where Mr. Struthers mentioned serving time in jail for a prior 4th degree assault." We address each assignment of error separately and in turn.

a. Relevancy and Prejudice of the Arrest Generally

"Evidence is relevant if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" State v. Weaville, 162 Wn. App. 801, 818, 256 P.3d 426 (2011) (quoting ER 401). "'To be relevant . . . evidence must (1) tend to prove or disprove the existence of a fact, and (2) that fact must be of consequence to the outcome of the case.'" Id. (quoting Davidson v. Mun. of Metro. Seattle, 43 Wn. App. 569, 573, 719 P.2d 569 (1986)). "This definition includes 'facts which offer direct or circumstantial evidence of any element of a claim or

defense.'" Id. (quoting Davidson, 43 Wn. App. at 573).

"[O]nly relevant evidence is admissible." Id. (citing ER 402). Even relevant evidence, however, should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

We hold that the trial court did not abuse its discretion in finding that the video recordings generally were relevant and its probative value was not substantially outweighed by the danger of unfair prejudice for at least two reasons: evidence of Erick's hostility towards his mother was relevant to show his mental state, and evidence of his level of intoxication was relevant to his defense.

This court's decision in Dillon is instructive in both regards. 12 Wn. App. 2d at 150. There, the State charged the defendant, George Dillon, with inter alia assault in the third degree for headbutting a police officer, who was arresting him for harassing a third party. Id. at 137-138, 139. After completing the arrest, the officer transported him to the hospital where Dillon "exhibited mood swings from anger to happiness" and "made threatening statements to [the officer] and hospital staff." Id. at 138. On appeal, Dillon argued that the trial court abused its discretion when it admitted those statements, as well as testimony related to other aggressive behavior. Id. at 146; see also id. at 150 (aggressive behavior included staring at those with whom he made eye contact).

This court held that the trial court did not abuse its discretion in admitting those statements and that behavior, first, "because the evidence of Dillon's threats and aggressive behavior at the hospital was relevant to show his mental state." Id. at 150. This court held that

6

> "'[b]oth prior *and subsequent hostile acts or declarations* have been found admissible, to issues of motive, malice, deliberation and state of mind, where relevant to such conditions as of the time of the offense. . . . A defendant's hostility toward his victims, even though expressed prior to or *subsequent to the crime*, may be admitted to show that the hostility existed at the time of the crime."

Id. (quoting State v. Finch, 137 Wn.2d 792, 822, 975 P.2d 967 (1999) (plurality opinion)) (emphasis added). Thus, we held that, "Dillon's hostility toward [the officer] continued at the hospital, and therefore was admissible to show his hostility at the time of the crime." Id.

In the same way, the trial court did not abuse its discretion in finding that the footage of (as his trial counsel described it) Erick's "mood swings," belligerent conduct, and hostility towards Susan shortly *after* committing the assault were relevant and probative to his state of mind *at the time* of the assault.

In Dillon, we further found that the defendant's statements and behavior were relevant in a second way. There, the "defense requested a jury instruction on voluntary intoxication and the State did not object." Id. at 139. We held that, "[s]ince Dillon's defense was that he was too intoxicated to form the requisite mental state, more testimony about Dillon's level of intoxication had a low prejudicial effect." Id. at 151. In other words, "[e]vidence of Dillon's intoxication assisted the jury in determining whether Dillon was unable to form the requisite mental state." Id.

Here, Erick also sought and received a voluntary intoxication instruction. What is more, Erick's counsel then structured the beginning of her closing argument around this defense and availed herself of the body camera footage, stating:

7

"Intent does matter because it has to be an intentional act. The testimony in this case is replete with evidence that Mr. Struthers was intoxicated, that he had been drinking Vodka. I am not sure that you need more than that but certainly you have both the video and the audio that let you know that he was, according to Ms. Struthers, delusional, psychotic, angry . . ."

As in Dillon then, "[t]he trial court did not abuse its discretion because the evidence was admissible to show [Erick's] hostility toward [the victim, Susan] and [his] level of intoxication." 12 Wn. App. 2d at 151.

In response, Erick characterizes the video as solely showing "Mr. Struthers resisting the attempt to arrest him." And he cites to State v. McDaniel, 155 Wn. App. 829, 854, 230 P.3d 245 (2010), for the proposition that evidence of resisting arrest is only "marginally probative" and is subject to the same analytic framework as when a State wishes to introduce evidence the defendant ran from the scene. This argument fails for two reasons.

First, unlike in McDaniel, where the "unruly arrest" occurred nine months earlier, Erick's behavior occurred directly after the commission of the crime. 155 Wn. App. at 855. Moreover, there was no suggestion of any kind in the record that the "unruly arrest" here was offered or used to suggest Erick's "consciousness of guilt." Id. Thus, we cannot say that the trier of fact could "reasonably infer the defendant's consciousness of guilt of the charged crime" based on those actions or from the State's presentation of the evidence. Id. at 854.

Finally, in attempting to show the unfair prejudice he suffered greatly outweighed the probative value, Erick does nothing more than make conclusory statements. In pertinent part, he states only that "[i]t is likely the jury used the evidence of Mr. Struthers 'assaultive conduct' during his arrest to remove any

doubt he strangled his mother by concluding he acted in conformity with his assaultive character exhibited during his arrest."[2]  Erick does not otherwise explain how, "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected."  State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986).  "This court will not consider claims insufficiently argued by the parties."  State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

For these reasons, we hold the trial court did not err in finding the evidence relevant under ER 402 and not unduly prejudicial under ER 403.

b.  404(b)

Alternatively, Erick contends that, even if the court properly admitted some portions of the body camera footage, the court erred by not redacting those portions in which he "mentioned serving time in jail for a prior 4th degree assault." Prior to trial, Erick had moved to exclude "any evidence or testimony that a witness believed a crime had occurred or that the defendant had committed a crime," "any reference to the defendant's criminal history" under ER 404(b), and "any other evidence that is excluded under ER 404(b).  The court confirmed the State intended to play those portions of the recording, heard argument, and denied Erick's motion, finding "[those portions] would be very difficult to edit it out, and, in fact, it might constitute a motive."

ER 404(b) prohibits admitting evidence to prove a defendant has a criminal

---

[2] As part of his argument, Erick states mid-paragraph that the "admission of this evidence falls under the ER 404(b) prohibition that evidence of other acts 'is not admissible to prove the character of a person in order to show action in conformity therewith."  He otherwise does not engage in the four-factor 404(b) analysis.  Thus, we will reserve consideration of that argument for the next assignment of error.

propensity, specifically stating:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (quoting ER 404(b)).

"The State must meet a substantial burden when attempting to bring in evidence of prior bad acts under one of the exceptions to this general prohibition." Id. To admit evidence of a person's prior misconduct, "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).[3]

There can be no dispute that the first factor is well founded as Erick was in

---

[3] Neither the parties on appeal nor the trial court on the record systematically performed the full four-factor analysis required under the law. State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) ("This analysis must be conducted on the record.") Because Erick does not assign error to this or any other related omission (such as the absence of a limiting instruction), and because the record is sufficient to assess the analysis that was conducted, we nonetheless will continue our analysis here. Gresham, 173 Wn.2d at 421 ("Where evidence is admissible for a proper purpose, the party against whom the evidence is admitted is entitled, upon request, to a limiting instruction informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character"); see, e.g., State v. Carleton, 82 Wn. App. 680, 685, 919 P.2d 128 (1996) ("Where the record reflects that the trial court has adopted the express argument of one of the parties as to the relative weights of probative value and prejudice, there is likewise no error").

fact convicted of assault at a prior time.

As to the second factor, we hold the court did not abuse its discretion in identifying motive as the proper purpose of this evidence. Namely, it is tenable theory that he was prompted to attack his mother because he believed that she had previously worked with the police to incarcerate him and was doing so again. Relatedly, it was tenable to conclude that he attacked his mother in anger because she helped his attorney "talk[] [him] into taking a plea." He flatly stated that he "already went to jail once for [Susan]." And Erick was clearly distraught generally, and angry specifically at his mother, when facing the prospect of returning to jail. "A number of cases dealing with the admissibility of evidence of prior assaults and quarrels have found that '[e]vidence of previous quarrels and ill-feeling is admissible to show motive.'" State v. Powell, 126 Wn.2d 244, 260, 893 P.2d 615 (1995) (alteration in original) (quoting State v. Hoyer, 105 Wn. 160, 163, 177 P.683 (1919)).

As to the third factor, Erick argues that "[t]he evidence of the prior assault was not relevant to any issue at trial." We disagree. As the trial court instructed the jury:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1)  That on or about January 17, 2023, the defendant *intentionally* assaulted Susan Struthers by strangulation; and
>
> (2)  That this act occurred in the State of Washington.

(Emphasis added).

Our Supreme Court in State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d

348 (2017), explained the close connection between motive and intent. "'Motive' speaks to . . . what prompted a defendant to take criminal action (e.g. attack a victim)," while "'[i]ntent' speaks to . . . what the defendant hopes to accomplish when motivated to take action (e.g. inflict great bodily harm or death)." Arredondo, 188 Wn.2d at 262 n.7. In that case, the court held that, "[b]ased on [the defendant's] motive, he acted with the intent to inflict great bodily harm." Id. at 262. Here, the evidence of Erick's motive (his anger at his mother's participation in his past and present incarceration, and her role in his decision to take the plea) provides a basis for the essential element of his intent to inflict great bodily harm by means of strangulation. Thus, it was not an abuse of discretion for a court to find that the evidence here established this third prong of the test.

Erick devotes one sentence of his opening brief to explain why the fourth factor weighs against admissibility, asserting simply that "[i]t was unfairly prejudicial because it suggested Mr. Struthers had a propensity for assaultive behavior and was the type of person who would commit the charged assault," and citing primarily to State v. Vazquez, 198 Wn.2d 239, 494 P.3d 424 (2021). Indeed, evidence of prior *convictions* is "very prejudicial" and ER 609 provides an exception to admission of such evidence. Vazquez, 198 Wn.2d at 252 (in analyzing ER 609, quoting State v. Hardy, 133 Wn.2d 701, 706, 946 P.2d 1175 (1997)).

The court, however, did not admit the record of the conviction (either under ER 609 or any other rule) and, as Erick's trial counsel acknowledged, the conviction was not admitted for the State's "case in chief," i.e., as substantive evidence. Rather, the court permitted the State to play those portions of the

12

recording mentioning Erick's fear of returning to jail to explain his motive for the attack. Moreover, Erick's trial counsel acknowledged in her closing statement that Erick did assault Susan in some way, so that the question before the jury was not whether he assaulted her but the degree of the offense. Thus, we do not conclude that the court abused its discretion in finding that the probative value outweighed the prejudicial effect. Gresham, 173 Wn.2d at 421.

Therefore, the trial court did not abuse its discretion in admitting the footage under ER 404(b).

Finally, even if there was error, it was harmless because we cannot conclude on this record that "'within reasonable probabilities . . . the outcome of the trial would have been different if the error had not occurred.'" State v. Carleton, 82 Wn. App. 680, 686, 919 P.2d 128 (1996) (quoting State v. Jackson, 102 Wn.2d 689, 694, 689 P.2d 76 (1984)). "In assessing whether the error was harmless, we must measure the admissible evidence of [the defendant's] guilt against the prejudice, if any, caused by the inadmissible testimony." State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

We conclude that the potential prejudice caused by this arguendo inadmissible testimony is of minor significance when measured against the admissible evidence of Erick's guilt. Three examples suffice.

First, Erick unprompted made statements to law enforcement, which he agrees were properly admitted as statements against his interest and which, as the officer testified, could lead a reasonable juror to believe "there was additional altercation." Second, there was physical evidence of bruising around the area of

13

Susan's neck, which corroborated her statements to law enforcement, whose admissibility is not challenged on appeal. Finally, there is the testimony from Susan that she "love[s] [her] son . . . more than anything in the world" and she made it extremely clear that she "absolutely" did not want to participate in the trial or testify against him, and yet stated simply and straightforwardly that indeed he strangled her.

Thus, we conclude the did not abuse its discretion in admitting the portions of the recordings it did and, if it did err, it is not reasonably probable that the admission of Erick mentioning jail materially affected the outcome of the trial. Carleton, 82 Wn. App. at 686.

C. Deputy Testimony

In recounting their investigation, the two arresting deputies made the following statements when questioned by the State:

Q. What is required to make an arrest, um, for an incident of domestic violence?
A. Probable cause for an assault that had occurred.

Q. Okay. And, um, if you don't establish probable cause you don't make an arrest?

A. Correct . . .

Q. [A]fter speaking with Ms. Struthers and documenting these injuries, . . . is that when you went back out to speak with Mr. Struthers?

A. Yes, it was.

Q. Okay. At that point in time had you made a probable cause determination?

A. It was at that time based on the injuries that I had seen in and her statements, um, yes probable cause was established.

14

Erick argues that the above testimony constitutes an improper opinion on guilt, and that the trial court abused its discretion in admitting it. We disagree.

"Opinions on guilt are improper whether made directly or by inference. Impermissible opinion testimony regarding the defendant's guilt may be a reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014) (citation omitted).

To determine whether statements are improper opinion testimony, courts will consider "(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact." State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007) (quoting State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)).

As to the first factor, "police officers' testimony carries an 'aura of reliability.'" State v. Montgomery, 163 Wn.2d 577, 595, 183 P.3d 267 (2008) (quoting Demery, 144 Wn.2d at 765). "But police officers' opinions on guilt have low probative value because their area of expertise is in determining when an arrest is justified, not in determining when there is guilt beyond a reasonable doubt." Id. Thus, if a statement is an opinion on guilt, such testimony would carry low probative value. And this factor would weigh against its admission.

Here, however, as in Kirkman, 159 Wn.2d at 933, these witnesses "did not come close to testifying on any ultimate fact. [They] never opined that [Erick] was guilty, nor did [they] opine that [Susan] was [strangled] or that [they] believed [Susan's] account to be true."

State v. Sutherby, 138 Wn. App. 609, 617, 158 P.3d 91 (2007), provides an instructive contrast. There, the State charged the defendant with various sexually related crimes. Id. at 612. The victim's mother in part but "[i]n essence . . . told the jury that [the victim] told the truth when [the victim] related the incriminating events to her" mother. Id. at 617. We found such testimony "wholly improper" and contrasted that impropriety to "some instances," as here where, "a witness who testifies to his belief that the defendant is guilty is merely stating the obvious, *such as when a police officer testifies that he arrested the defendant because he had probable cause to believe he committed the offense*." Id. Thus, a court would not abuse its discretion in finding this factor weighs against testimony being an opinion on guilt.

Moreover, the nature of the charge, the type of defense, and the other evidence before the trier of fact are wholly unaffected by the fact that the deputies testified that they had probable cause to arrest Erick. Kirkman, 159 Wn.2d at 928. The deputies "merely stat[ed] the obvious" regarding probable cause in the above testimony and did not invade the province of the jury by doing so. Sutherby, 138 Wn. App. at 617.

Finally, Erick cites to State v. Stith, 71 Wn. App. 14, 17, 856 P.2d 415 (1993), where the prosecutor stated:

> Our system has incredible safeguards that would not allow a case like this to come to court if somehow the police acted improperly. So, the question of probable cause is something the judge has already determined before the case came before you today.

Id. This court found these statements "flagrantly improper," holding that "[t]his was tantamount to arguing that guilt had already been determined." Id. at 22.

16

This argument fails for various reasons. First, the assignment of error there was prosecutorial misconduct, which we must consider under a different analytic framework than here where Erick claims witnesses had opined on his guilt. Erick nowhere explains how the distinct questions are related. "It is not the responsibility of this court to attempt to discern what it is appellant may have intended to assert that might somehow have merit." Port Susan Chapel of the Woods v. Port Susan Camping Club, 50 Wn. App. 176, 188, 746 P.2d 816 (1987).

Moreover, the statement is clearly factually distinguishable. Nowhere here is there a suggestion from the deputies that a judge had agreed with their conclusion that there was probably cause for the arrest. It would not be an abuse of discretion then for a court to reject the assertion "guilt had already been determined" by a judge. Stith, 71 Wn. App. at 22.

Finally, the court in Stith considered this statement explicitly in the context of various other statements the prosecutor made in violations of standing motions in limine. Id. at 21-22. Here, there is no such pattern, but a passing comment in the context of explaining their investigation of this matter.

Thus, we hold that the trial court did not abuse its discretion when it found that the deputies' testimony was not an improper opinion on guilt.[4]

---

[4] Finally, Erick asserts that the cumulative error doctrine applies to the above errors he asserts. As we found no reversible error above, we do not reach this issue.

III.   CONCLUSION

We affirm the superior court.

WE CONCUR:

Díaz, J.

_Cohen, J._

_Dwyer, J._