[No. 27645-0-I.   Division One.   August 16, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT KENNEDY STITH, *Appellant.*

*Lise Ellner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Stokstad, Deputy,* for respondent.

KENNEDY, J. — Robert Stith challenges his conviction of delivery of cocaine in violation of the Uniform Controlled Substances Act, claiming that reversal is required due to prosecutorial misconduct. Finding that, in two instances, the prosecutor's conduct was so flagrant and prejudicial that even the trial court's strongly worded curative instructions could not have cured the prejudice, we reverse and remand for a new trial.

### FACTS

On August 22, 1990, Stith was charged by information with possession of a controlled substance with intent to deliver, to wit, cocaine.

At trial, Seattle Police Officer Paul Grady testified that on the evening of August 16, 1990, he observed Stith, who was sitting in a circle with some other people, give one of these persons something and then receive cash in return. Officer Grady testified that, when Stith saw him, he stuffed something into his mouth and ran away.

Officer Grady and Officer Rossen (who was with Officer Grady) pursued Stith on bicycles. Officer Grady testified that, when Stith was apprehended, he spit out a substance. This substance was recovered and later identified as cocaine. At the time of his arrest, Stith had $126 on his person.

Stith testified that on the evening in question, he met Keith Brooks near the downtown McDonald's and went to a 7-Eleven store to buy beer for himself and Brooks and a cigarette for Brooks. He testified that the two then went to Westlake Park where they were approached by two males who asked if they wanted to buy drugs. He testified that he

declined the drugs, and then he saw two bicycle police officers approaching him. Stith testified that he ran away because drinking alcohol was a violation of his probation. He stated that the money he had on him when he was arrested was given to him by a friend of his mother to buy clothes.

Keith Brooks corroborated Stith's story, stating that he and Stith had been asked if they wanted to buy drugs while in Westlake Park, but had declined. Brooks testified that he had not seen Stith with drugs.

Aletta Wayman also testified for the defense, stating that she was a friend of Stith's mother, and that she had given Stith $150 to buy shoes and clothes shortly before he was arrested.

In cross examination of the appellant the prosecutor engaged in the following questioning:

> Q: Both of [the officers] told us, told the jury, that they were no more than a couple of feet from you and they both told us that they saw you spitting rocks out. Are they lying?
> A: Yes, they are.
> Q: They are fabricating this whole story?
> A: They are fabricating the whole story.

No objection was made to this questioning.

In closing argument to the jury, the prosecutor stated:

> [Mr. Stith] knew exactly what he was doing. He knew what was up. He was just — he was out. He was out of jail for a week and he basically was just resuming his criminal ways. He was just coming back and he was dealing again.

After a sidebar conference the trial court instructed the members of the jury

> to disregard any inference that Mr. Stith was incarcerated due to any activities that relate to or that could be considered as relating to the present charge. You are to totally disregard any inference about his being out on the street and dealing again.

In his closing argument, Stith's attorney stated:

> Counsel and ladies and gentlemen, in terms of the conclusion that — of the various possible defenses in any given case, usually the last one you want to have to choose is that the police are making something up. The reasons for that I think

are twofold. The first one is maybe the most obvious one, and that is that the police officers are police officers. They come into court. They, in fact, are an embodiment of the state. . . .

But the other reason is . . . this . . . would be a scary place to live if the police officers . . . are capable of making up a case against someone, stretching the truth, maybe even going so far as to fabricat[e] a particular point of fact to make their case. . . .

. . . [The standard of proof] allows you to return a verdict of not guilty without actually having to write someplace that the cops are lying . . ..

. . . .

Officer Grady is a pro. He's a pretty good witness. He's done it hundreds of times. Officer Grady is a professional at deceiving people. He testified to you that once he went three months under deep cover. His whole identity had to be a lie. He's gone undercover many times since then. He's good at it. He's a professional witness who can come in here and do what he's done many, many times before: express himself with conviction and make people believe that what he's saying is the way it is.

In the prosecutor's rebuttal, the following occurred:

[PROSECUTOR]: What is Mr. Flora asking you to do today? He stood up here today and he's asking you to call the officers liars; that they planted the drugs; that they fabricated this whole thing; that Officers Grady and Rossen walked into court here, took an oath and Grady looked at you and lied; that this didn't happen; that somehow these officers are willing to just impugn their integrity, risk incredible consequences by acting in a way that's illegal and is offensive, frankly. And I find Mr. Flora's argument to be offensive —

MR. FLORA: Objection, your Honor.

[PROSECUTOR]: He suggested some sort of —

MR. FLORA: Your Honor, I would object to counsel personalizing the argument.

THE COURT: Noted for the record.

[PROSECUTOR]: As I was saying, it's offensive to suggest that somehow Officer[s] Rossen and Grady were in some sort of conspiracy because Grady has more experience than Officer Rossen.

The prosecutor went on to state in his rebuttal:

And this case, ladies and gentlemen, wouldn't be . . . in court here today if there was any problem about the way Officer[s] Grady and Rossen acted. Our system has incredible safeguards that would not allow a case like this to come to court if somehow the police acted improperly. So the question of probable cause is something the judge has already determined before the case came before you today.

Defense counsel then objected to the comment on probable cause as improper argument, and the court sustained the objection as it "relates to the process that preceded the present hearing . . .".

Defense counsel later made a motion for a mistrial and, in the alternative, to strike the prosecutor's comments suggesting that probable cause had been predetermined. The motion for a mistrial was denied. The court called the jury back into the courtroom and stated:

> Members of the jury, you've been called back out so that we might clear something up even before you begin your deliberation. You heard some information regarding probable cause and whether or not something had already been established prior to the case being presented to you. Any information or inference that probable cause has been pre-established by this Court or otherwise is stricken from the record and you must completely and absolutely disregard any information to that effect concerning the probable cause or anything else that might have already been done as it relates to these particular defendants. You will make your decision based on the evidence produced in court.

The jury returned a verdict of guilty. This appeal followed.

## DISCUSSION

■ Stith contends that several of the prosecutor's statements constituted misconduct requiring reversal. Washington law recognizes that a prosecutor has a special duty in trial to act impartially in the interests of justice and not as a "heated partisan". *State v. Reed*, 102 Wn.2d 140, 147, 684 P.2d 699 (1984) (quoting *People v. Fielding*, 158 N.Y. 542, 547, 53 N.E. 497 (1899)).

> Cross examination designed to compel a witness to express an opinion as to whether other witnesses were lying constitutes misconduct. In addition, comments [in closing argument] calculated to appeal to the jury's passion and prejudice and encourage it to render a verdict on facts not in evidence are improper.

(Citations omitted.) *State v. Stover*, 67 Wn. App. 228, 230-31, 834 P.2d 671 (1992), *review denied*, 120 Wn.2d 1025 (1993).

■ "Allegedly improper arguments should be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given." *State v. Graham*, 59 Wn. App. 418, 428, 798 P.2d 314 (1990).

■ However, prosecutorial misconduct requires a new trial only if the misconduct was prejudicial. *Graham*, 59 Wn. App. at 426. Misconduct is prejudicial when, in context, there is "a substantial likelihood" that the misconduct "affected the jury's verdict." *State v. Barrow*, 60 Wn. App. 869, 876, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991). The defendant bears the burden of proof on this issue. *Barrow*, 60 Wn. App. at 876.

Stith contends that reversal is required because of three specific instances of prosecutorial misconduct: (1) that, in both cross examination of the appellant and closing argument the prosecutor impermissibly indicated that, in order to believe the defendant, the jury would have to conclude that the police were lying; (2) that, in closing argument, the prosecutor not only implied that appellant's prior conviction was for drug dealing but directly stated that he was out on the street dealing again; and (3) that, in rebuttal argument, the prosecutor indicated that our system has incredible safeguards to prevent police from lying and that probable cause had already been determined, implying guilt. We consider each of these contentions in turn.

A. *Comments and Questions Concerning the Veracity of the Police Officers*

This court has previously determined, and the State concedes, that cross examination or comments in closing argument which seek to compare the honesty of the defendant with law enforcement officials or comments which express a personal opinion of witness veracity are improper. *See Stover*, 67 Wn. App. at 230; *Barrow*, 60 Wn. App. 870-76; *State v. Casteneda-Perez*, 61 Wn. App. 354, 362, 810 P.2d 74, *review*

*denied,* 118 Wn.2d 1007 (1991). Thus, the prosecutor's cross examination which elicited a response from appellant that the police officer witnesses were lying was improper. However, we hold that reversal is not required based on the cross examination because there was no objection and the misconduct was not so prejudicial that it could not have been cured by an appropriate instruction.

If misconduct is not objected to or a curative instruction is not requested, then reversal is required only if the misconduct was so prejudicial that it could not have been cured by an objection and appropriate curative instruction. *Stover,* 67 Wn. App. at 232.

Although the question to Stith about whether the officers were lying was damaging because it tended to impugn his own honesty (which was the underlying basis of his defense), the prejudice could have been prevented by a proper objection or cured by an appropriate instruction. If an objection had been entered when the question was first asked, before a response was given, the jury would not have heard Stith's answer and the judge could have instructed the jury to disregard the question. No harm would have occurred. Once the question was asked and answered, an objection and an appropriate instruction could have cured the prejudice.

As for the comments in closing argument, when the prosecutor suggested that the defense counsel was calling the police officers liars, an objection was made. We note that the objection was based not on the prosecutor's characterization of the defense argument but to the prosecutor's statement that he personally found the defense attorney's argument to be offensive.

The circumstances which gave rise to these comments are different from facts in other cases in which such comments have been found to be improper, and these circumstances lessen the prejudicial impact involved. Here, in his closing argument, counsel for the defense more than merely suggested that the jury had a basis to conclude that the police officers might be lying. Although the defense counsel framed his argument in terms of the jury not having to call the

police officers "liars" by returning a not guilty verdict, in effect, counsel stated that the officers might not be telling the truth because one of them was an experienced deceiver in his undercover work. In such a case, it was not inappropriate for the prosecutor to make *some remark* about the veracity of the police officer witnesses in rebuttal.

The rule against misconduct is not designed to hamper a prosecutor's effectiveness in rebuttal. We have stated before that, in closing argument, a prosecutor may comment on a witness's veracity as long as a personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury. *Stover*, 67 Wn. App. at 232. In *Graham*, this court held that, when a defendant impugns the credibility of a witness, a prosecutor may ask the jury to consider whether the defense theory is credible. *Graham*, 59 Wn. App. at 428-29. Here, as in *Graham*, the prosecutor's comments could logically be seen by the jury as a response to Stith's closing argument.

Although we agree that the prosecutor's response approached if not passed the barrier of "heated partisanship" and that the injection of his personal reaction to the defense theory was improper, given the context of the remarks of defense counsel which preceded the prosecutor's comments, we find no basis for reversal. The remarks did not emphasize the prosecutor's personal belief in the officer's veracity, but instead appear as a mere reaction to the rather strong suggestion of defense counsel that at least one of the officers could have been untruthful. Thus, the remarks would not have influenced the jury as a statement of evidence. We hold that neither the cross examination of Stith nor the prosecutor's remarks about police officer honesty in closing argument requires reversal.

B. *Comment on Prior Convictions and Comment Regarding Incredible Safeguards and Probable Cause*

Of far greater concern are the prosecutor's comment in closing argument that the appellant "was just coming back and he was dealing again", and his later comment, in rebut-

tal, to the effect that our system has incredible safeguards to prevent police officer perjury and that probable cause had already been determined.

The first comment indicated to the jury that the prior crime for which appellant was convicted was drug related (a fact which had not previously been entered into evidence) and is also impermissible opinion "testimony" that the appellant was selling drugs again and thus was guilty, not only of the previous charge, but also of the current charge. Moreover, the remark was made in spite of a direct court order on a motion in limine to exclude any evidence of prior drug convictions.

The second comment concerning "incredible safeguards" and the court's prior determination of probable cause not only constituted "testimony" as to facts not in evidence but also indicated to the jury that, if there were any question of the defendant's guilt, the defendant would not even be in court. This was tantamount to arguing that guilt had already been determined. Clearly, both comments were flagrantly improper. We next consider whether so much prejudice occurred that reversal is required, in spite of the curative instructions.

Here, objections were entered and the trial court gave strongly worded curative instructions. Specifically, after the comment regarding the appellant's drug dealing, the trial court explicitly stated that the jury should "totally disregard" any inference that the appellant was involved in prior drug activity. After the comment regarding "incredible safeguards" and "probable cause", the trial court issued a strongly worded warning to the jury that any inference of the establishment of probable cause must be ignored. Moreover, the trial court stated that the jury was only to consider evidence presented in court. We applaud the trial court's effort to blunt the impact of these remarks but, even though the jury is presumed to follow the instructions of the trial court, *State v. Guizzotti*, 60 Wn. App. 289, 296, 803 P.2d 808, *review denied*, 116 Wn.2d 1026 (1991), we cannot conclude that these re-

marks did not result in prejudice. Prosecutorial misconduct can be so prejudicial that it *cannot* be cured by objection and/or instruction. *See State v. Powell,* 62 Wn. App. 914, 919, 816 P.2d 86 (1991), *review denied,* 118 Wn.2d 1013 (1992). This is such a case.

Unlike the earlier remarks at issue, these comments clearly reflect the prosecutor's personal assurances to the jury as to the defendant's guilt. Taken together these comments not only implied that the trial was a useless formality because the real issues had already been determined but also directly stated that Stith was out on the streets, dealing again. Such comments strike at the very heart of a defendant's right to a fair trial before an impartial jury. Once made, such remarks cannot be cured.

As in *State v. Belgarde,* 110 Wn.2d 504, 508, 755 P.2d 174 (1988), *aff'd,* 119 Wn.2d 711, 599 P.2d 837 (1992), wherein the Supreme Court overturned a conviction for prosecutorial misconduct, the "remarks were flagrant, highly prejudicial and introduced 'facts' not in evidence." Instructions to the jury to disregard the comments cannot cure such prejudice. The mandatory remedy is a mistrial. We therefore reverse and remand for retrial.

WEBSTER, C.J., and SCHOLFIELD, J., concur.