IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80297-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DADDY CONTEH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Daddy Conteh was convicted of assault in the second degree with a deadly weapon enhancement as a lesser included offense following a jury trial for assault in the first degree with the same enhancement. The charge was predicated on Conteh stabbing Joel Jensen after a verbal confrontation escalated. Conteh appeals, arguing that the prosecutor made comments in closing argument that amount to prosecutorial misconduct and that he received ineffective assistance of counsel. Finding no misconduct or deficient conduct by defense counsel, we affirm.

FACTS

Daddy Conteh was charged with assault in the first degree with a deadly weapon enhancement for stabbing Joel Jensen in an altercation that occurred outside of a convenience store in Seattle in June 2018. Conteh proceeded to a jury trial on the charge and was acquitted of assault in the first degree, but

convicted of the lesser included offense of assault in the second degree with a deadly weapon enhancement. Conteh acted as a "casual laborer" for the store, helping with custodial care and sometimes acting as informal security in exchange for food and cash. When Conteh arrived at the store at around 7:30 a.m. the morning of the incident, he was quite intoxicated. Just before 8:00 a.m., Jensen entered the store to make a purchase. Conteh let the cashier know that he should not sell anything to Jensen, pursuant to an informal policy of the store; as Jensen had been caught shoplifting the evening before. The cashier, Harwinder Singh, rejected Jensen's attempt to make a purchase.

What occurred next was disputed at trial. Jensen testified he complained to Singh about Conteh, said something to Conteh along the lines of "stay away from me," and left the store at Singh's direction. According to Conteh, Jensen called him a liar, used a racial slur, and told him to go back to his country. Singh was unable to recall what words were exchanged, but did note Jensen's anger during the exchange with Conteh.

Jensen can be seen in security footage exiting the store and picking up an item off the ground. Conteh then exited the store and the two men again exchanged words. Conteh said that Jensen kicked over a coffee cup that Conteh had placed on the ground. According to Jensen, this angered Conteh. Jensen testified Conteh then made physical contact which he initially perceived as a punch to his right arm. However, when he heard the sound of metal hit the ground and saw a knife, he realized he had been stabbed. Jensen denied possessing a weapon and did not recall threatening Conteh.

Conteh's testimony provided that when he stepped out of the store, Jensen was armed with a knife, used racially charged language and said "I'm gonna fuck you up." Conteh claims he unsuccessfully tried to grab Jensen's hand which was holding the knife in the hope of disarming him and that Jensen then kicked over the coffee cup on the ground. Conteh testified he was fearful of being stabbed by Jensen, so grabbed his own knife and stabbed Jensen. Conteh indicated it was never his intention to inflict serious injury to Jensen; merely to get him to retreat. After the stabbing, Conteh said he returned to the interior of the store and placed the knife under an ice cream freezer out of fear police would shoot him if he was still carrying it. Jensen was stabbed in the right armpit, which caused his lung to collapse. Jensen made his way back to the motor home he was staying in nearby and summoned his friend, Richard Smith, who called 911. Police arrived at the store and took Conteh into custody.

The case proceeded to jury trial in which numerous witnesses testified, including Conteh. Admitted evidence included footage from multiple cameras around the interior and exterior of the store which captured much of the incident. Litigation became heated during closing argument when defense repeatedly objected to the State's presentation. This resulted in the trial court interrupting argument and excusing the jury on two separate occasions to address the complaints, and conduct, of counsel. The jury convicted Conteh of the lesser included offense of assault in the second degree with a deadly weapon enhancement. The court imposed nine months confinement and an additional mandatory term of 12 months for the deadly weapon enhancement to run

consecutively, for a total of 21 months in prison. Conteh was also ordered to serve 18 months of mandatory community custody upon release. Conteh appealed.

ANALYSIS

I.    Prosecutorial Misconduct

Conteh focuses his challenge on two remarks made by the prosecutor; the first during the State's initial closing and the second in its rebuttal argument. He argues both statements amount to prosecutorial misconduct such that it deprived him of a fair trial. Under this procedural posture, Conteh has the burden of establishing 1) the prosecutor's conduct was improper, and 2) that he suffered prejudice as a result of the misconduct. State v. Schlichtmann, 114 Wn. App. 162, 167, 58 P.3d 901 (2002). "In closing argument, the prosecuting attorney has a wide latitude in drawing and expressing reasonable inferences from the evidence." State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). "They may not, however, make prejudicial statements that are not sustained by the record." State v. Dhaliwal, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). "As a quasi-judicial officer, a prosecutor must subdue courtroom zeal for the sake of fairness to the defendant." State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

Prejudice is established when "there is a substantial likelihood the instances of misconduct affected the jury's verdict." State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). "Reversal is not required if the error could have been obviated by a curative instruction which the defense did not request." Hoffman, 116 Wn.2d at 93. "Allegedly improper arguments should be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and

the instructions given." State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). In review of the context when addressing allegations of improper argument, this court has considered opposing counsel's statements and argument, as well as the extent to which the challenged comments were logically responsive to other arguments presented. State v. Stith, 71 Wn. App. 14, 21, 856 P.2d 415 (1993).

The first comment Conteh argues was improper was the prosecutor's remark in closing that, "[Defense Counsel] made a great show of the video." Specifically, Conteh's concern lies with the prosecutor's colorful description of the manner by which defense counsel cross-examined witnesses about the security camera footage that was admitted into evidence. Though both parties spend an unnecessary amount of their appellate briefing on the definition and usage of the term "show," this is not where we center our analysis. Viewed against the entirety of the trial, it appears that that the State was focusing on the defense's heavy reliance on the security footage and how it related to witnesses' testimony about the incident. Though the State should use caution when stepping into the realm of idioms and artful characterizations as opposed to specificity and precision, we do not find this comment to be misconduct given the circumstances of the case. In the midst of trial, defense counsel could reasonably perceive this comment as a personal attack, but the record as a whole suggests that it is just as plausible that it was not. The prosecutor's remark about defense counsel's "great show of the video" does not constitute misconduct.

The second incident which Conteh argues was misconduct is captured in the following passage from the State's rebuttal closing:

> [STATE]: You know, ladies and gentlemen, it's pretty interesting, listening to [Defense counsel]'s closing, when he starts it out, when he's talking about the facts—by having to disavow something specific that his own client said on the stand in order to be able to make the arguments he just made to you.
> Did you notice that, when the defendant took the stand, he testified clearly that Joel Jensen had a knife in his hand? Not a weapon, a knife.
> Did you notice, when [Defense counsel] was talking to you, the defendant's testimony that he had a knife in his hand became—
> [DEFENSE]: Your Honor, this is a mischaracterization.
> [STATE]: —he has a weapon.
> THE COURT: Hang on. Hang on.

Specifically, Conteh argues the prosecutor's attack on the use of the word "weapon" by defense counsel, as opposed to "knife" which Conteh used in his testimony, and suggestion that defense's language change was due to a "hurdle" presented by the evidence were improper. The judge overruled the defense objection and the State immediately repeated "[Defense counsel] has some hurdles to overcome to try to convince you that his client's testimony was actually credible." After another objection by the defense a few moments later, the judge noted "I find both . . . [c]ounsel's conduct in this closing argument to be extraordinary" and excused the jury to hear from the attorneys. The prosecutor expressly denied disparaging counsel and indicated that he was simply pointing out discrepancies between testimony and argument in defense closing. After the jury returned, the State resumed rebuttal closing and returned to his discussion of defense's characterization of the testimony. Defense moved for a continuing objection and the court again excused the jury.

The record makes clear that disdain between the attorneys may have grown throughout the trial and was particularly evident during closing arguments. The conduct of counsel was such that the judge was ultimately put into a position of having to excuse the jury more than once to reiterate to both attorneys the need to restrict their arguments to the evidence adduced at trial, to calm their body language and generally act like professionals. The judge noted its consideration of the potential negative impact on both parties and ultimately concluded that "it's not ideal."

The trial court is best situated to recognize the full context of this sort of conduct, as well as the jury's perception of such. State v. Luvene, 127 Wn.2d 690, 701, 903 P.2d 960 (1995). The record reflects the court's thoughtful consideration of how the argument was conveyed and its impact on the jurors, however the judge did not find harm such to require the State to end its argument. That said, the court indicated to the attorneys that it was open to that precise remedy if the behavior continued or escalated. We defer to the trial court's determination, after observing the exchange firsthand, that while the State's argument veered off track, it was not misconduct.

Even if the argument by the prosecutor about the defense's paraphrasing was such that it constituted misconduct, prejudice has not been established. We first acknowledge the wisdom of juries, as we do not believe this lack of professionalism was lost on them. We also presume the jury followed the instructions given. State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). Instruction 18 stated:

> A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the dangers. Actual danger is not necessary for the use of force to be lawful.

This instruction reinforces and legitimizes the possible justification for defense use of the term weapon; the jury could find Conteh acted on reasonable grounds and a good faith belief that he was in actual danger of injury, even if they determined that Jensen was not armed with a knife at the time of the confrontation in the parking lot, despite Conteh's clear testimony to that effect. As noted earlier, the security footage did appear to show Jensen pick something up from the ground just prior to the stabbing. With the presumption that the jury followed the instructions of the court, we must conclude that this instruction would have cured any prejudice which could have resulted from the State's attack on the language used by the defense. Id.

It is significant that Conteh was convicted of the lesser included offense of assault in the second degree, as opposed to assault in the first degree, which suggests the jury discerned the evidence in light of the charges presented and weighed it thoughtfully. The jury was shown numerous pieces of surveillance video that were admitted at trial. In their deliberation, the jurors were able to consider their own perception of the events as captured in the footage and ground their deliberation not only in testimony and argument of counsel which are framed for a particular purpose, but also in that evidence which they were able to directly observe. As such, after review of the record as a whole, we find neither prejudice nor misconduct in the aspects of argument to which Conteh assigns error. We do,

however, join the trial court in reminding counsel of the value of focused reflection as to the propriety and efficacy of the nature of the advocacy utilized in this trial.

II.       Ineffective Assistance of Counsel

Conteh next asserts that his attorney was ineffective when he used "weapon" as opposed to Conteh's chosen word, "knife," in closing argument, provided alternate theories for why Conteh hid the knife, and did not move for a mistrial after the State's comments in rebuttal closing.  This court reviews claims of ineffective assistance of counsel de novo, as they involve a mixed question of law and fact.  In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

Both our state and the federal constitutions guarantee all criminal defendants the right to effective assistance of counsel.  U.S. CONST. amend VI; WASH. CONST. art. I, § 22.  In order for Conteh to prevail on this assignment of error, he must establish that his counsel provided deficient performance and that the deficient performance resulted in prejudice.  Fleming, 142 Wn.2d at 865. "Courts engage in a strong presumption counsel's representation was effective." State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).  Our court's review of how counsel handled an individual's case must be highly deferential. Strickland v. Wash., 466 U.S. 688, 689, 104 S. Ct. 2052, 80 L. Ed. 674 (1984).

As to the paraphrasing of Conteh's testimony in defense closing, we do not find deficient performance.  First, it was not improper to refer to the knife as a weapon; a knife is a type of weapon.  There likely was a strategic benefit, as demonstrated by the prosecutor's attempted attack in rebuttal closing, in utilizing

broader language that more closely mirrored the terminology in the jury instruction on perceived threat. This word choice does not appear to indicate a doubt as to his client's credibility, but instead reinforced that the jury need not explicitly determine that Jensen was carrying a knife in order to acquit based on self-defense, only that Conteh reasonably feared injury. Upon the State's insinuation that the difference in word choice was intentional due to an evidentiary hurdle, counsel declared "I said weapon. If it should be a knife, fine" and "I will say now he used a knife." On appeal, Conteh frames that as desperation, but his dramatic, explicit adoption of Conteh's precise phrasing undercuts any lingering concern about counsel's alleged doubt in his client's testimony. In review of the full record, with the strong presumption of sufficient performance, we do not find counsel's use of the term "weapon" was deficient.

Neither do we find deficient performance in defense argument that offered other reasons why Conteh may have hidden the knife under the ice cream freezer. Conteh testified that he hid the knife after the altercation with Jensen because he feared police would shoot him upon their arrival. Defense counsel suggested in closing that Conteh may have hidden the knife out of regret or after second-guessing the propriety of his actions. On appeal, Conteh suggests this proffered reasoning does not line up with his testimony, but the additional suggestions of counsel appear to be reasonable inferences based on the totality of trial testimony. In briefing, Conteh suggests this comment demonstrates that counsel was disloyal to his client, thereby breaching his duty. The record does not support such a claim.

Nothing in the plain terms of defense argument disavowed Conteh's testimony or demonstrated disloyalty. We do not find deficient performance.

Conteh's final assertion in his claim of ineffective assistance of counsel was his attorney's failure to bring a motion for mistrial in response to the argument by the State in its rebuttal closing. As we found neither misconduct nor prejudice on that issue, we cannot conclude that failure to move for mistrial on this basis was deficient performance. Conteh's claim of ineffective assistance fails.

Affirmed.

WE CONCUR:

Mann, C.J.