# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58013-6-II |
| Respondent, | |
| v. | |
| JONATHAN EDWARD DELO, | UNPUBLISHED OPINION |
| Appellant. | |

Lee, J. — Jonathan E. Delo appeals from his conviction on one count of first degree theft, arguing (1) prosecutorial misconduct, (2) ineffective assistance of counsel, and (3) cumulative error.  Delo also asks this court to strike the crime victim penalty assessment (CVPA) from his judgment and sentence, which the State concedes.

We affirm Delo's conviction because (1) while the prosecutor argued facts not in evidence, Delo fails to show any prejudice resulting from the misconduct; (2) Delo's ineffective assistance claims fail; and (3) Delo fails to show cumulative error.  However, because the trial court found Delo indigent, we accept the State's concession and remand to the trial court with instructions to strike the CVPA from Delo's judgment and sentence.

## FACTS

### A.    THEFT AND INVESTIGATION

On June 6, 2022, Jeffrey Scherer called the police to report that "a John Deere Model 323 E-track loader" (tractor) had been stolen from a construction site that Scherer's company was working on.  Verbatim Rep. of Proc. (VRP) (Feb. 16, 2023) at 89.

Deputy Justin Blake responded to the reported tractor theft on the morning of June 6. Deputy Blake spoke with Scherer, and Scherer indicated the direction he believed the thief or thieves went. Deputy Blake investigated the area and first observed tire abrasions on a nearby curb, indicating "the vehicle or the piece of machinery" was towed off the gravel it was parked on and onto the concrete curb. VRP (Feb. 16, 2023) at 109-10. Deputy Blake observed tire tracks from a vehicle, tire tracks from a trailer, "track hoe tracks,"[1] and fresh foot impressions. VRP (Feb. 16, 2023) at 111. The "track hoe" tracks "disappeared, indicating that it had been driven up onto something." VRP (Feb. 16, 2023) at 111. Based on the direction of the track hoe, vehicle, and trailer tracks, Deputy Blake was able to determine which way the vehicle and trailer traveled. Deputy Blake also determined that the footprints he observed were along "the passenger side of the [vehicle]" and the "passenger side of the . . . trailer." VRP (Feb. 16, 2023) at 112. Deputy Blake did not observe any footprints on what would have been the driver's side of the vehicle.

Later that day, Scherer notified Deputy Blake that Scherer had found his "machine" based on a tip Scherer received after posting about the tractor on social media. VRP (Feb. 16, 2023) at 96. Deputy Blake responded to Williams Creek Road and observed the "track loader" parked "slightly off the roadway" and directly in front of a residence. VRP (Feb. 16, 2023) at 116. Deputy Blake observed two men, "a maroon or red Ford F-150," and "a flatbed trailer" outside of the residence. VRP (Feb. 16, 2023) at 117. Upon further investigation, Deputy Blake "observed shoe impressions . . . consistent with the shoe impressions [he] observed" at the construction site. VRP

---

[1] Deputy Blake referred to a "track hoe" while the prosecutor referred to a "tractor" or "track loader." *See* VRP (Feb. 16, 2023) at 108-11.

(Feb. 16, 2023) at 120. Deputy Blake also found impressions left by a vehicle and a trailer that were consistent with the vehicle and trailer impressions he found at the construction site.

Deputy Blake also spoke with the two men he saw outside the residence, Delo and Joshua Williams. During the conversation, Deputy Blake looked at Williams' shoes and noted that "the impression on the bottom of [Williams'] footwear was consistent with the shoe impressions that [Deputy Blake] observed in the driveway at the residence, as well as" those he observed at the construction site. VRP (Feb. 16, 2023) at 122.

After securing a search warrant, Deputy Blake searched the truck parked outside the residence. Inside the truck, he found Williams and Delo's drivers licenses, a G8 Elite device,[2] two John Deere equipment keys, and a hand-held radio. A hand-held radio was also located in the tractor.

Sergeant Carson Steiner, who assisted Deputy Blake in the investigation at Williams Creek Road, retrieved the hand-held radio from the tractor, "keyed it up," spoke into it, and heard his voice emanating from the hand-held radio in the truck. VRP (Feb. 16, 2023) at 157. Sergeant Steiner also noted that the truck's tow hitch was larger than typical for a F-150; such a large tow hitch would normally be used for "heavy equipment towing, RV trailers, such like that." VRP (Feb. 16, 2023) at 157.

---

[2] A G8 Elite device is a device that can, "among other things," detect cameras, detect radio frequency signals, and block GPS signals. VRP (Feb. 16, 2023) at 78. This device is also referred to in the proceedings below as a G8 RF device and a RF 8 device.

B.    TRIAL

The State charged Delo by amended information with one count of first degree theft of the tractor. Prior to Delo's trial, Williams, who the State also charged, pleaded guilty to the theft of the tractor.

1.    Opening Statement

Delo's case proceeded to a jury trial on February 16. During opening statement, the prosecutor stated:

> Another interesting fact, is that within the truck was found a G8 RF device. Now, what you are going to hear about this device, and Deputy Blake, I believe researched it. And what you are going to hear about this device, among other things, is it can detect cameras. It can detect RF signals and things like that. But it can also block GPS signals, which these kinds of pieces of equipment are often equipped with, okay?
>
> . . . So radio in the truck, radio in the tractor, G8—the RF device that can be used to block GPS signals, trailer ball.

VRP (Feb. 16, 2023) at 78.

2.    Trial Testimony

The State called four witnesses: Scherer, Deputy Blake, Sergeant Steiner, and Detective Timothy Rogich, all of whom testified consistent with the facts above. During Deputy Blake's testimony, the State offered, and the trial court admitted, two photos of the G8 Elite device Deputy Blake found in the truck. However, the State did not ask Deputy Blake about the G8 Elite device's capabilities. The State did ask Scherer about "a G-A-R-F device, a G-A-O-E-R-F device," but Scherer did not know what that was. VRP (Feb. 16, 2023) at 95. Sergeant Steiner and Detective Rogich were not asked about the G8 Elite device.

Detective Rogich, a certified digital forensic examiner, testified regarding Williams and Delo's cellphones. After search warrants were secured for both cellphones, Detective Rogich attempted to extract data from each. Detective Rogich testified that he was unable to access Delo's phone and could not extract any data from it. Detective Rogich was able to access Williams' cellphone, but when he did so, he recognized it had been "factory reset." VRP (Feb. 16, 2023) at 149.

Finally, Delo called Williams to testify in his defense. Williams testified that he and Delo had been friends for 2-3 years. According to Williams, in early June, he and Delo went to the Lucky Eagle Casino around 9 or 10 PM. The two arrived in Delo's girlfriend's truck, a maroon F-150.

Around 1 or 2 in the morning, Williams asked Delo for the keys to the truck so Williams "could go get some stuff out of [Williams'] backpack." VRP (Feb. 16, 2023) at 166. Delo obliged, and Williams took the truck and picked up the trailer from the Williams Creek Road residence. From there, Williams drove to the construction site where he had spotted the tractor a few days earlier. Williams parked the truck, climbed onto the tractor and started it with a default code he looked up online. Williams used the trailer to drive the tractor back to the Williams Creek Road residence, offloaded the tractor from the trailer, and left both at the residence.

Williams also testified that he returned to the casino after dropping off the tractor and trailer. Williams estimated that he was gone between one and a half and two hours. Williams stated that he did not communicate with Delo the entire time he was gone and that Delo never asked him why he was gone for so long. Finally, Williams testified that there were "a couple of walkie-talkies in [the truck] that were mine." VRP (Feb. 16, 2023) at 170.

5

On cross examination, Williams testified that he did not have a heavy equipment license. Williams also testified that he had no experience towing heavy equipment but had driven "trucks with trailers" before. VRP (Feb. 16, 2023) at 174. When asked how he started the tractor, Williams testified, "It was, I mean, I don't remember exactly. I remember the code being 000— like four zeros. I don't remember the exact sequence I had to type in, it was a long time ago." VRP (Feb. 16, 2023) at 173. When asked what else he had to do, Williams responded, "I mean, to drive it I had to move a few levers, but to start it, I had to push, like, two buttons, I think, before the code, and then another one after the code, I believe." VRP (Feb. 16, 2023) at 173. Williams did not know the size of the truck's tow hitch or the size of tow hitch required to tow a trailer. Finally, Williams testified that he had no idea what a "G8 RF device" was. VRP (Feb. 16, 2023) at 176.

3. Closing Arguments, Verdict, and Sentencing

The State made three references to the G8 Elite device during its closing arguments:

> More interestingly, the RF 8—the GRF device was found. That—you have heard testimony that it has multiple uses, but one of those uses can be to defeat GPS tracking. Now, there is no indication that this tractor had GPS tracking, you didn't hear any testimony about that, but it's not illogical to assume that somebody that was planning on taking a piece of heavy equipment might want to plan for that possibility.
>
> . . . .
>
> Mr. Williams didn't know what a G8 device was. He had no clue what that was. That's not his, that's Mr. Delo's. He doesn't have a clue what that thing is or what it does.
>
> . . . .

So there is no way the evidence that you see in the truck that is clearly not owned by Mr. Williams, the G8 device that Mr. Williams didn't know anything about, that's Mr. Delo's.

VRP (Feb. 16, 2023) at 184-88. Delo did not make any objections during closing arguments.

Delo's closing argument referenced Detective Rogich's search of his and Williams' cellphone:

You also heard earlier today, a representation that there had been a phone dump. My client, you know, dumped information on his phone. Detective Rogich testified, with the equipment available to him in the county sheriff's forensics division, he wasn't able to access the phone. He also indicated that there seemed to be efforts made to see if a thumb print of the defendant could be secured, that was last June, there was no further investigation on that. So it's represented there was—we can't represent that there was, per say, a phone dump. That's an assertion, but there was no further follow-up on that front. So I would ask you, on that, to not make inferences or presumptions from that limited scope of investigation there.

VRP (Feb. 16, 2023) at 196.

The jury found Delo guilty as charged. The trial court sentenced Delo to 75 days of confinement with 30 days converted to 240 hours of community service, plus credit for time served. The trial court also imposed a $500 CVPA despite finding Delo indigent as he "receives an annual income, after taxes, of 125 percent or less of the current federal poverty level." Clerk's Papers (CP) at 31.

Delo appeals.

## ANALYSIS

A.    PROSECUTORIAL MISCONDUCT

Delo argues that prosecutorial misconduct during closing argument denied him of a fair trial. Specifically, Delo asserts that it was improper for the prosecutor to reference the capabilities of the G8 Elite device during closing argument because no evidence was presented at trial

explaining what the device did. We reject Delo's argument because while the prosecutor's statements during closing argument were improper, Delo fails to show that no curative instruction would have obviated any prejudice.[3]

### 1. Legal Principles

To prevail on a claim of prosecutorial misconduct, the defendant must show the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The applicable analysis is two-pronged: The court begins by asking "whether the prosecutor's conduct was improper." *State v. Teas*, 10 Wn. App. 2d 111, 120, 447 P.3d 606 (2019), *review denied*, 195 Wn.2d 1008 (2020). If so, "then the question turns to whether the prosecutor's improper conduct resulted in prejudice. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict." *Id.* (citation omitted); *Emery*, 174 Wn.2d at 760.

If the defendant fails to object to the prosecutor's misconduct at trial, they waive "'any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'" *Teas*, 10 Wn. App. 2d at 121 (quoting *Emery*, 174 Wn.2d at 760-61). Under this standard, the defendant must show "'(1) no curative instruction

---

[3] To the extent Delo argues that the prosecutor improperly referenced the G8 Elite device during opening statement, we disagree.

The prosecutor's reference to the G8 Elite device's capabilities during opening statement was not improper. "A witness's expected testimony is a permissible subject for opening statement," even if the expected evidence is not ultimately adduced at trial. *State v. Teas*, 10 Wn. App. 2d 111, 127, 447 P.3d 606 (2019), *review denied*, 195 Wn.2d 1008 (2020); *State v. Thorgerson*, 172 Wn.2d 438, 444, 258 P.3d 43 (2011). Thus, to the extent Delo alleges the prosecutor's opening statements regarding the G8 Elite device was improper, we reject Delo's argument.

would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.'" *Id.* (internal quotation marks omitted) (quoting *Emery*, 174 Wn.2d at 761). The analysis focuses on "whether the resulting prejudice could have been cured." *Id.*; *see also State v. Crossguns*, 199 Wn.2d 282, 299, 505 P.3d 529 (2022) ("'Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured.'" (quoting *Emery*, 174 Wn.2d at 762)).

### 2. Misconduct During Closing Arguments

Prosecutors "have 'wide latitude to argue reasonable inferences from the evidence.'" *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018) (quoting *Thorgerson*, 172 Wn.2d at 448). However, a prosecutor's argument "must be based on the evidence and must not misstate the applicable law." *Crossguns*, 199 Wn.2d at 296-97.

Delo challenges two references to the G8 Elite device made by the prosecutor during closing arguments.

One of the prosecutor's references to the G8 Elite device was not improper because it relied on evidence from trial. The prosecutor stated that Williams did not know what the G8 Elite device was, and then argued that Williams' lack of knowledge and the fact that the device was located in Delo's truck suggested the device belonged to Delo. At trial, photos of the device were admitted into evidence, Deputy Blake testified he found the device in Delo's truck, and Williams testified he had no idea what the device was. Therefore, the prosecutor's statements that the device was found in Delo's car and that Williams did not know what it was were based on evidence presented at trial. And the prosecutor's statement that the device belonged to Delo was a "'reasonable

9

inference[]'" from that evidence. *Phelps*, 190 Wn.2d at 166 (quoting *Thorgerson*, 172 Wn.2d at 448). Thus, the prosecutor's statements regarding where the device was found, Williams' knowledge of it, and Delo's ownership of it were not improper. *Id.*

The prosecutor's second reference during closing argument to the G8 Elite device explained the device's capabilities. This explanation of the device's capabilities relied on facts not in evidence—neither party presented any evidence at trial explaining what the G8 Elite device did. Closing arguments "must be based on the evidence" or reasonable inferences from the evidence. *Crossguns*, 199 Wn.2d at 296-97. Thus, the prosecutor's explanation of the G8 Elite device's capabilities when there was no evidence presented relating to the device's capabilities was improper.

3.    Prejudice

Once Delo has carried his burden of showing the prosecutor acted improperly, he must then show that he was prejudiced by the prosecutor's improper conduct. *Teas*, 10 Wn. App. 2d at 120; *Emery*, 174 Wn.2d at 760. However, because Delo did not object to the prosecutor's improper statements at trial, he waives his prosecutorial misconduct argument unless he can show that "'the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'" *Teas*, 10 Wn. App. 2d at 121 (quoting *Emery*, 174 Wn.2d at 760-61).

Delo argues any prejudice could not have been cured because "[o]nce jurors heard the prosecutor's repeated statements and arguments about the G8 Elite, a curative instruction . . . would not have prevented jurors from mistakenly recalling the evidence consistent with the prosecutor's own mistaken recollection." Br. of Appellant at 17. We disagree.

In assessing prejudice, "'[t]he criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" *Emery*, 174 Wn.2d at 762 (second alteration in original) (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)). While Delo maintains a curative instruction would not have cured any prejudice to him, he does not explain how, and instead merely concludes that no instruction would prevent jurors from considering the prosecutor's statements as evidence.

Moreover, Delo's argument ignores the multiple instances where the jurors were told that what the prosecutor and defense counsel said was not evidence. For example, after the jury was sworn, the trial court explained that the only evidence the jury could consider was witness testimony and admitted exhibits; the trial court also told the jury that the "lawyer's statements are not evidence." VRP (Feb. 16, 2023) at 64. During opening statement, defense counsel reminded jurors twice that what he and the prosecutor said was not evidence. Defense counsel reminded the jury of the same during closing arguments. During the State's rebuttal argument, the prosecutor agreed with defense counsel that "what I say, what he said, is not evidence." VRP (Feb. 16, 2023) at 198. Finally, prior to deliberation, the trial court instructed the jury,

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

CP at 9. Because the jury was instructed multiple times to disregard the lawyers' statements unless they were supported by the testimony or exhibits, and we presume jurors follow a trial court's instructions, it is unlikely the prosecutor's challenged statements created "'such a feeling of

11

prejudice . . . in the minds of the jury as to prevent'" Delo "'from having a fair trial.'" *Emery*, 174 Wn.2d at 762, 766 (quoting *Slattery*, 169 Wash. at 148).

Delo also argues that "[s]ome arguments referring to facts not in evidence simply cannot be cured with an instruction," citing *State v. Stith*, 71 Wn. App. 14, 22-23, 856 P.2d 415 (1993), in support. Br. of Appellant at 17. But Delo provides no evidence, only speculation, that the jury disregarded the multiple instructions to not consider the lawyers' statements as evidence. Delo's argument is conclusory and assumes the jury did not follow the trial court's instructions, but we presume the opposite. *See Emery*, 174 Wn.2d at 766 ("[J]urors are presumed to follow the court's instructions.").

Moreover, *Stith* is distinguishable. There, the court explained that "[p]rosecutorial misconduct can be so prejudicial that it *cannot* be cured by objection and/or [a strongly worded curative] instruction." *Stith*, 71 Wn. App. at 22-23 (emphasis in original). However, the court explained as much only after concluding that two of the prosecutor's challenged statements were "flagrantly improper" because they were an improper opinion and "tantamount to arguing that guilt had already been determined," respectively. *Id.* at 22. Here, unlike the statements in *Stith*, the prosecutor's comments were not flagrantly improper and a curative instruction would likely have obviated any prejudice to Delo, especially in light of the repeated warnings that the lawyers' statements were not evidence. Because Delo fails to show that a curative instruction would not have obviated any prejudice, his prosecutorial misconduct claim fails.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Delo argues he received ineffective assistance of counsel because defense counsel: (1) did not move to strike, at the close of evidence, the prosecutor's opening statement references to the

G8 Elite device; (2) failed to object to the prosecutor's references to the G8 Elite device during closing arguments; and (3) "misstated the evidence in a manner benefitting the State" during closing arguments. Br. of Appellant at 22. We address each in turn.

1.      Legal Principles

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) deficient performance by counsel, and (2) that counsel's deficient performance prejudiced them. *Id.* at 32-33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. This court applies "a strong presumption that counsel's performance was reasonable." *State v. Lawler*, 194 Wn. App. 275, 289, 374 P.3d 278, *review denied*, 186 Wn.2d 1020 (2016). "If defense counsel's conduct can be considered to be a legitimate trial strategy or tactic, counsel's performance is not deficient." *Id.*

As for the prejudice prong, the defendant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). An ineffective assistance claim fails if either deficient performance or prejudice is not shown. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

2.      First Ineffective Assistance Claim

Delo argues he received ineffective assistance of counsel when defense counsel failed to move "to strike the prosecutor's unproven assertions in his opening statement" at the close of evidence. Br. of Appellant at 20. We disagree.

Defense counsel's decision to not move to strike after the close of evidence the statements the prosecutor made during opening statements "can be considered . . . a legitimate trial strategy or tactic" because defense counsel could then argue during closing argument that the State failed to deliver on its promises during opening statement. *Lawler*, 194 Wn. App. at 289. Delo fails to rebut the presumption that defense counsel's decision to not move to strike after the close of evidence statements made by the prosecutor during opening statements was a legitimate trial tactic or strategy. Accordingly, Delo's first ineffective assistance claim fails. *Classen*, 4 Wn. App. 2d at 535.

3.      Second Ineffective Assistance Claim

Delo next argues that he received ineffective assistance of counsel when defense counsel failed "to object to all references to the G8 Elite's capabilities and uses when the prosecutor raised the subject . . . during closing argument." Br. of Appellant at 20-21. We disagree.

Even assuming without deciding that defense counsel's failure to object was deficient performance, Delo fails to show prejudice. *Classen*, 4 Wn. App. 2d at 535. Delo argues that he was prejudiced by defense counsel's failure to object because the "evidence of Mr. Delo's guilt was far from overwhelming, and Mr. Williams testified under oath that Mr. Delo was not involved." Br. of Appellant at 21.

14

Aside from being conclusory, Delo's prejudice argument relies solely on Williams' testimony. However, by finding Delo guilty, the jury, as trier of fact, obviously made credibility determinations relating to the witnesses' testimony, determinations that we will not disturb on appeal. *State v. Bass*, 18 Wn. App. 2d 760, 780, 491 P.3d 988 (2021), *review denied*, 198 Wn.2d 1034 (2022).

Moreover, Delo's argument ignores the evidence presented at trial supporting his guilt. For example, Delo and Williams were at the residence where the truck and the stolen tractor were found. Detective Blake observed that Williams' shoes matched the prints found at the construction site from where the tractor was stolen, the prints were found only along the passenger side of the truck and the trailer and not on the driver's side of the vehicle, and the prints were also found at the residence where the tractor was found. A reasonable inference from this evidence is that Williams was not alone in taking the tractor from the construction site. Also, Delo's driver's license, some tractor keys, a G8 Elite device and a hand-held radio were found in the truck, which was parked outside the residence where the stolen tractor was found. And Williams testified that he did not have a heavy equipment license nor did he have any experience towing heavy equipment; he started the tractor by pushing two buttons, entering the code 0000, then pushing another button; he drove the tractor by moving a few levers; he did not know the truck's tow hitch size or the size of a tow hitch required to tow a trailer; he had no idea what a G8 Elite device was; he left the casino at 1 or 2 in the morning in the truck, picked up a trailer, stole the tractor, and dropped the trailer and the tractor off at the residence before going back to the casino; and Delo never asked him why he was gone for so long when Williams had only asked Delo for the keys to the truck to get something out of a backpack. A jury could reasonably infer from this evidence

that Williams did not steal the tractor by himself as he claimed but that he stole the tractor with Delo.

Because Delo fails to show he was prejudiced by defense counsel's failure to object, his second ineffective assistance claim fails. *Classen*, 4 Wn. App. 2d at 535.

4.      Third Ineffective Assistance Claim

Finally, Delo argues he received ineffective assistance of counsel when defense counsel "misstated the evidence in a manner benefitting the State" during closing arguments and suggested that Delo engaged in "an activity consistent with guilt that not even the State's witnesses had suggested." Br. of Appellant at 22; Reply Br. of Appellant at 5-6. We disagree.

During closing argument, defense counsel argued:

> You also heard earlier today, a representation that there had been a phone dump. [Delo], you know, dumped information on his phone. Detective Rogich testified, with the equipment available to him . . . he wasn't able to access the phone. He also indicated that there seemed to be efforts made to see if a thumb print of the defendant could be secured, that was last June, there was no further investigation on that. So . . . we can't represent that there was, per say, a phone dump. That's an assertion, but there was no further follow-up on that front. So I would ask you, on that, to not make inferences or presumptions from that limited scope of investigation there.

VRP (Feb. 16, 2023) at 196.

Even if counsel inappropriately relayed in closing arguments that Delo "dumped information on his phone," Delo's claim would still fail because he has not shown he was prejudiced by defense counsel's argument. VRP (Feb. 16, 2023) at 196. Delo makes the same prejudice argument here as he did above. *See* Br. of Appellant at 25 ("[F]or the reasons just discussed, there is a reasonable probability [defense counsel's misstatement of the evidence] affected the jury's verdict by undermining the defense position that Mr. Delo was not involved.").

As noted above, Delo's argument is conclusory. More importantly, Delo's case came down to a credibility determination: was Williams' testimony that he alone stole the tractor credible? The jury answered no by convicting Delo, and we will not disturb the jury's credibility determination on appeal. *Bass*, 18 Wn. App. 2d at 780. And, as discussed above, there is substantial evidence presented at trial to support the jury's guilty verdict. Also, even if defense counsel did misstate the evidence by suggesting that Delo "dumped" the information on his phone, the jury was instructed multiple times that the lawyers' statements were not evidence and that the case had to be decided on the evidence presented. VRP (Feb. 16, 2023) at 196. We presume juries follow the trial court's instructions. *Emery*, 174 Wn.2d at 766. Thus, Delo's third ineffective assistance claim fails.

C.      CUMULATIVE ERROR

Delo argues that cumulative error denied him a fair trial. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *Emery*, 174 Wn.2d at 766.

Delo merely states that the combined effect of the trial court's errors "improperly undermined Mr. Delo's trial defense and significantly eased the State's burden to prove his guilt beyond a reasonable doubt." Br. of Appellant at 26-27. Without any argument to support this statement, Delo fails to show that the trial was fundamentally unfair. And, as discussed above, Delo fails to show any prejudice from any alleged errors. Therefore, Delo's cumulative error claim fails.

D.     CRIME VICTIM PENALTY ASSESSMENT (CVPA)

Delo argues, and the State concedes, that this court should strike the CVPA from Delo's judgment and sentence because the trial court found him indigent and the CVPA is no longer statutorily authorized for indigent defendants. We agree and accept the State's concession.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the CVPA on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, *review granted*, ___ P.3d ___ (2025). A defendant is indigent if they "[r]eceiv[e] an annual income, after taxes, of one hundred twenty-five percent or less of the current federally established poverty level." RCW 10.101.010(3)(c). Although the amendment to RCW 7.68.035(4) took effect after Delo's sentencing, the amendment applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16.

Here, the trial court found Delo indigent because he "receives an annual income, after taxes, of 125 percent or less of the current federal poverty level." CP at 31. Thus, we accept the State's concession and remand to the trial court with instructions to strike the CVPA from Delo's judgment and sentence.

## CONCLUSION

While the prosecutor improperly argued facts not in evidence during closing argument, Delo fails to show he was prejudiced by the misconduct. Furthermore, Delo's ineffective assistance of counsel claims fail. And Delo fails to show that cumulative error denied him a fair trial. Finally, the CVPA is no longer statutorily authorized for indigent defendants. Therefore, we affirm Delo's conviction but remand to the trial court with instructions to strike the CVPA from Delo's judgment and sentence.

No. 58013-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Price, J.

19